# THE

# NEW YORK SUPPLEMENT

## VOLUME 155

(169 App. Div. 450)

### CARROLL v. KNICKERBOCKER ICE CO. (No. 193/115.)

(Supreme Court, Appellate Division, Third Department. September 15, 1915.)

MASTER AND SERVANT ☞250¾ New, vol. 16 Key-No. Series—INJURIES TO SERVANT—PROCEEDINGS UNDER WORKMEN'S COMPENSATION ACT.

Under Workmen's Compensation Act (Consol. Laws, c. 67) § 67, subd. 2, providing that the commission shall adopt rules providing the nature of evidence to be accepted by it, and ,section 68, declaring that technical rules of evidence or procedure are not required, the Workmen's Compensation Commission may make an award on hearsay evidence, or other evidence which would be incompetent under the statutes and at common law.

Lyon and Woodward, JJ., dissenting.

Appeal from Workmen's Compensation Commission.

In the matter of the claim of Bridget Carroll for compensation for herself and children for the death of Myles Carroll, under the Workmen's Compensation Law, against the Knickerbocker Ice Company. From an award of the Workmen's Compensation Commission, directing the payment of $100 funeral expenses and $4.61 weekly to Bridget Carroll, the widow, and $1.13 weekly to each of five children, the employer appeals. Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

Frank R. Savidge, of New York City (Frederick M. Thompson and David G. McConnell, both of New York City, of counsel), for appellant.

Egburt E. Woodbury, Atty. Gen. (E. C. Aiken, of Albany, of counsel), for respondent.

Jeremiah F. Connor, of New York City, for Compensation Commission.

HOWARD, J. The decedent was a driver on an ice wagon owned and operated by the Knickerbocker Ice Company. While putting in ice at a café on Forty-Second street, in New York City, the decedent, according to the findings of the commission, was injured by reason of his ice tongs slipping, which caused a cake of ice to come back and strike him in the abdomen. Nobody saw the accident, and nobody

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

155 N.Y.S.—1

attempts to testify directly as to the cause of the accident. On the occasion in question the deceased vomited what appeared to be blood; whether the vomiting was before or after the alleged accident is not certain. The cake of ice which the decedent was handling weighed 300 pounds, and he, with the assistance of two other persons, lifted it four feet and put it in the ice box. The decedent drank a glass of whisky on the occasion; he and his helper also had a bottle of stout. The decedent went home and was taken sick, and shortly afterwards was taken to a hospital, where he died four days afterwards. He stated to his wife, and also to the doctors and to Mary Murphy, that his tongs had slipped, and the ice had come back on him, hitting him in the abdomen. At the hospital he developed delirium tremens. The proof of death made by the attending physicians gives, as the remote cause, that "300 pounds of ice struck his epigastrina, causing gastric hemorrhage—rigidity in upper abdomen. * * *" The immediate cause is given as "œdema of the lungs—delirium tremens." The deceased was a hard drinker, and had been such for 25 years.

If we were to look at this case as we would look at an action in court, or if we were to adhere to the substantive law of evidence, it is entirely clear that the award should be instantly revoked. The proof offered was of such a character that no court would have hesitated a moment to reject it. All the rules of evidence, the accumulation of centuries of experience and wisdom, were ignored by the commission. But was the commission not authorized to ignore them? Indeed, in order to keep step with the spirit of the law, was the commission not bound to ignore them? It is clearly evident that the great bulk of the testimony in this case was hearsay, and in some instances hearsay upon hearsay. There is slight evidence that the deceased vomited blood, and some evidence from which it might be inferred that he strained himself by lifting on the ice. From these two slender items of evidence the commission might have inferred that the injury arose from the accident. Everything else is wholly hearsay. The doctor's certificate that the remote cause of death was because 300 pounds of ice hit the deceased is, of course, only hearsay. So that the question arises here whether the commission, under section 68 of the Compensation Act, were authorized to receive the hearsay evidence and base their findings upon it. Section 68 reads as follows:

"*Technical Rules of Evidence or Procedure Not Required.* The commission or a commissioner or a deputy commissioner in making an investigation or inquiry or conducting a hearing shall not be bound by common law or statutory rules of evidence or by technical or formal rules of procedure, * * * but may make such investigation or inquiry or conduct such hearing in such manner as to ascertain the substantial rights of the parties."

Subdivision 2 of section 67 also provides that the commission shall adopt rules providing the "nature" of the evidence to be accepted by it. As to proceedings before the commission, these two sections wholly abrogate the substantive law of evidence—abrogate the common law, the statute law, the rules of procedure formulated by the courts, and all the technicalities respected by the legal profession. The commission is authorized by this section, it seems, to make its investigation in any manner that it chooses, wholly unfettered by any law pre-

viously invented by man. This is the spirit of the statute. The commission is to be bound neither by custom nor by precedent. The trials before the commission are to be summary, speedy, and informal. The very instant that the old rules of evidence are invoked, the informal character of the hearing disappears, and the rigid, formal rules of procedure and all the technicalities incident to the practice of the law will grow up around the commission, hampering and delaying it, working inconvenience and hardship upon the claimants, and defeating the intent of the law.

Assuming, then, that the commission had the right to receive the hearsay evidence which it did receive, and act upon it (and if it had a right to receive it, it had a right to act upon it), its decision on the questions of fact was final and is beyond our power to criticise or revoke. Section 20, Workmen's Compensation Law. See, also, Laws 1915, c. 167, amending said section 20.

The award of the commission should be affirmed.

SMITH, P. J., and KELLOGG, J., concur. LYON, J., dissents.

WOODWARD, J. (dissenting). The award appealed from should be reversed, and the proceeding remained to the State Workmen's Compensation Commission for the taking of further testimony, if available. The record at bar does not contain evidence which can be accepted as sufficient, or as *any*, proof upon matters essential to the right of the claimant to receive compensation under the statute. Findings which state conditions precedent to any validity of the award stand in the present record without evidence fairly tending to support them. Under such circumstances, this court has no right to sanction the payment of money to the claimant pursuant to the award, for thereby would be imposed, upon the patrons of the decedent's employer and upon the community as a whole, a considerable burden and expense which the statute did not contemplate and the fundamental spirit of our laws forbids.

In the proceeding at bar, the Compensation Commission seems to have acted under a certain misapprehension of its powers, functions, and permissible procedure, in passing upon the right of a claimant to the protection provided by the statute. This misapprehension is altogether explicable under the statute, and is in no wise discreditable to the commission's sincerity of purpose and integrity of action, yet the consequences are such as to require reversal of the resultant award. As the issues here raised are of novel impression, yet of vital importance to the daily work of the Compensation Commission and its successors, it seems proper to state in some detail the opinion of this court thereon, in so far as the matter is presented by the award under review.

The Workmen's Compensation Act does not undertake to provide a system of indemnity for the widows and children of all workers who die during the period of their employment in one of the enumerated trades. Any right of the widow or dependent children to claim compensation for being deprived of the decedent's earnings, and thus assess their loss against the cost of the employer's product or service to the community, must be predicated on the determination that the

earnings were cut off by "disability or death * * * *resulting from* *an accidental personal injury* arising out of and in the course of his employment." Laws 1914, c. 41, § 10. Precedent, therefore, to the commission's right to make an award in allowance of any claim, must be the production of *proof:* (1) That the worker sustained a known and determinable accident or mishap in the course of his employment; (2) that this accident or mishap arose out of his employment; (3) that this accident or mishap caused the worker injury to his person; and (4) that the injury caused disability or death, and thereby terminated the support of widow or children from the earnings of the employment. In the absence of fair and acceptable proof of these vital elements, the commission has no power, and could be vested with no power under our Constitution and laws, to award reimbursement ultimately assessed upon society as a whole, any more than the commission or a court, prior to the statute, would have had power, without such proof, to exact such indemnity from the individual employer whose legal fault caused the injury. The change in the fundamental spirit and purpose of our statutes governing indemnity for industrial accidents (Rheinwald v. Builders' Brick and Supply Co. [App. Div., Third Dept., May, 1915] 153 N. Y. Supp. 598, not yet officially reported) has in no wise waived or lessened the necessity for actual proof of the accident, its relation to the employment, the resultant injury, and the consequences of that injury.

The record at bar I scan in vain for anything which can be called demonstration or proof, anything which ought fairly and reasonably to convince an ordered mind, as to the presence of these essential elements in the events leading up to the death of the claimant's husband. The commission's decision and award hinge upon a finding of fact that on September 22, 1914, while Myles Carroll, the deceased, was in the employ of the Knickerbocker Ice Company as a driver on a wagon for the delivery of ice, "the ice tongs slipped" as he was "putting ice in the cellar of a saloon at 20 East Forty-Second street, in the borough of Manhattan, New York City," and "a 300-pound cake of ice fell upon him, striking him in the abdomen, causing an epigastric hemorrhage, and a rigidity of the abdomen." On the following day he was sent to the Bellevue Hospital, where he was found to be suffering from delirium tremens. On September 28th he died at the hospital, and the immediate cause of death was stated to be "œdema of the lungs—delirium tremens." The commission found as a matter of fact that "the primary and predominating cause of death was the injury to the abdomen, and the delirium tremens was a contributory cause, in decreasing the resisting power of the individual." The commission formally found that these injuries "resulted in his death," that they were "accidental," and that they "arose out of and in the course of his employment."

I have read the record with care, and fail to find therein, upon the points enumerated below, anything which can be called evidence sustaining the finding and warranting judicial sanction of the transfer of funds from the treasury of the self-insuring employer to the pockets of the claimant and her children. There is literally no proof that the deceased sustained an "accident" while carrying ice; no proof that his

"ice tongs slipped"; no proof that a cake of ice weighing 300 pounds, or any cake at all, fell upon him; no proof that he was struck in the abdomen on that day; no proof that any "accident" happened in the course of his employment which caused "an epigastric hemorrhage and a rigidity of the abdomen." There is little that can be called convincing demonstration that the sole cause of death was not delirium tremens and attendant manifestations, or that any "injury" at any time had anything to do with Carroll's death in the alcoholic ward of Bellevue Hospital, six days after the alleged misadventure with the ice tongs; but it can hardly be said that the commission's finding that death was not principally and solely due to excessive use of alcohol was without evidence tending to sustain it.

It is not necessary to review in detail the record of the proceedings before the commission, or to analyze the supposed "evidence" upon which the findings of fact are based. It is not asserted here, in behalf of the claimant or the commission, that there is actually in the record any "evidence" sufficient to sustain these essential findings of fact, if the proceedings had and the proof taken be subjected to the scrutiny which is required by common-law and statutory standards of evidentiary demonstration. It is not claimed that there was adduced before the commission "evidence" which would stand the test of analysis in the light of any rules of proof hitherto known in any proceeding, judicial or quasi judicial. The position is rather that the commission acts administratively rather than judicially; that it has been expressly emancipated from the requirements of common-law and statutory rules of evidence and procedure; that its findings of fact have been explicitly made final and conclusive, beyond the power of this court to review; that the record made before the commission was such as to convince its members in good faith that the claimant came within the purview of the statutory protection; and that the commission's finding and award may be questioned here only upon showing of bad faith or entire disregard for due forms of procedure.

An instance or two will sufficiently illustrate the "evidence" upon which the commission based its findings. For example, as to the falling of ice upon the decedent's abdomen: No witness was produced who saw any ice fall, any tongs slip, any accident or mishap, or any clear evidence of injury sustained at the time claimed. The half dozen or more witnesses who testified that they were on the scene saw no accident, no fall of ice. Dr. Bancroft, the attending physician, testified that the deceased told him that a piece of ice fell and hit him, causing pains in the abdomen. The wife of the deceased testified to a somewhat more circumstantial story of the fall of the ice, which she said he told her. One Mary Murphy, a visitor in the decedent's household, told a similar story of what she said the deceased had told her. Dr. Weeks, of the Presbyterian Hospital, to which Carroll went before transfer to Bellevue, testified that Carroll told him a piece of ice fell on him; but Dr. Weeks could find no indications of injury in the region of the stomach. Dr. Carroll, of the Bellevue alcoholic ward, found no bruises or abrasions, and no indications of any abdominal injury. Fucillo, Carroll's helper on the wagon, who made the "eyewitness' affidavit of the injury," testified that he saw no accident and heard of none, and

that, when the affidavit was presented to him which said that ice fell on the deceased, he crossed that part out before signing, and told the claimant's representative that Carroll had not been injured. The testimony of the various physicians by no means established that Carroll's condition, when examined, was explicable only on the assumption that he had received an injury from the fall of a heavy cake of ice; the reported conditions leave it at least doubtful whether any accident or injury bore any causal relation to his death. So on the question of the slipping of the tongs, the fall of a 300-pound cake of ice, the pressure of such a cake on the decedent's chest or abdomen, and the development of any consequences therefrom, the only "evidence" offered was "hearsay" versions of self-serving declarations made by Carroll. In some instances we have a "hearsay" version of statements which in turn were purely "hearsay." No witness who was called to the stand gave testimony indicating that such an accident happened; the only testimony on that score was that of persons who were not there, but say the decedent afterwards said his condition was due to such an accident, and persons who were there at the time, but saw and knew nothing of any accident.

The claimant and the commission assert that the "evidence" is sufficient to sustain the findings. They say that it reasonably convinced them that there was an accident, and consequent injuries causing death, and that no other or further proof was requisite, even though the commission did not see or examine, and counsel for the insurer had no opportunity to confront and cross-examine, any persons who stated that ice fell upon the decedent, that he sustained any mishap whatever, nor was any statement made under oath that any such thing took place.

It is, of course, true that the State Workmen's Compensation Commission was primarily an administrative rather than a judicial body, and was entitled, in most respects, to act in the manner usual in the conduct of administrative offices, without obligation to follow the more formal requirements of judicial procedure. In determining, however, a claim for compensation under the statute, the commission was charged with a duty of ascertaining and recording facts and making inferences and conclusions therefrom, and was charged with a power to award payment of moneys from one person to another, according as such facts might be found and conclusions reached. By centuries of traditional law, such duties, powers, and functions have come to be regarded as judicial in their nature, even though intrusted to administrative officers or boards, and a long line of precedents, fairly paralleling the history of the development of property rights under the law, it has come to be recognized that these duties, powers, and functions may not be performed by any officer or board, except in conformance to long-revered standards as to what is fundamentally fair, sound, and right in such procedure. Even though the Compensation Act made "final" the findings of the commission upon all questions of fact, the question whether a finding of fact by such a body is without evidence tending to support it is a question which this court has the right and duty to review. And, as was said by this court in the Rheinwald Case, supra:

"In all cases the question of the correctness of the commission's determination as to the applicability of the statute to the injury upon which the claim was based remains a question for judicial scrutiny, in the light of the facts as found by the commission."

The commission claims that there was evidence upon the vital issues; that the sworn narrative of persons who heard the unsworn statements of the deceased as to what befell him was evidence which the commission, in its discretion, was entitled to accept and hold sufficient, even though it all would have been rejected in a court of law. As authority for this view, attention is directed to section 68 of the Compensation Act:

"Sec. 68. *Technical Rules of Evidence or Procedure Not Required.* The commission or a commissioner or deputy commissioner in making an investigation or inquiry or conducting a hearing shall not be bound by common law or statutory rules of evidence or by technical or formal rules of procedure, except as provided by this chapter, but may make much investigation or inquiry or conduct such hearing in such manner as to ascertain the substantial rights of the parties." Laws 1914, c. 41.

This section, obviously designed to promote informality and directness and eliminate technicality in procedure, cannot be construed to warrant the commission to make a finding and award *without legal evidence to sustain it.* The commission was, of course, entitled, in all its hearings relative to claims, to go to the very right of the matters at issue, and summarily search out the full facts concerning them. It would be a misfortune were the inquiry of such a board narrowly constrained by harassing formalities of procedure or insubstantial technicalities as to the admissibility of proffered proof. Both the letter and the spirit of this salutary statute excludes the idea of technicality in its administration or fettering constraints on the commission's purpose to glean all the facts and do substantial justice under the law. Accordingly the commission had the right and power, in its untrammeled discretion, to receive and admit proffered proof freely and liberally, with a view to developing all the facts. It might take any evidence, oral or documentary, which impressed its members as perhaps tending to disclose to them the whole situation as to matters in dispute. If, in the exercise of this discretion, part of the testimony taken proves to be "hearsay," or part of it is "not connected," or lacks probative force, or offends against some other rule of evidence. no one may be heard to complain. Section 68 empowered the commission to proceed freely and earnestly in search for all facts throwing light on the vital issues; it does not proceed in any peril of fatal error, through failure to draw closely the evidentiary rules obtaining in courts of law.

But after the commission has gathered all this data, all this information, unfettered by "technical rules of evidence," then must come sifting and sorting; then must come assortment of wheat from chaff, demonstration from gossip, proof from "hearsay"; and then the ascertainment of what facts have been *fairly proved,* under "the maxims which the sagacity and experience of ages have established as the best means of discriminating truth from error." Bouvier's Law Dictionary. No matter what proffered testimony has been taken, no mat-

ter how extraneous and immaterial many portions of the record ultimately appear, it is the residuum of legal evidence which must be decisive. There must be in the record some evidence of a sound, competent, and recognizedly probative character to sustain the findings and award made, else the findings and award must in fairness be set aside by this court.

Section 68 of the act, then, cannot be given any force as emancipating the commission from all legal restraints as to the presence of duly proved facts as essential basis for findings. Section 68 enunciates no rule as to the *probative force* of testimony at all. It sanctions no departure from the traditional basis on which money or property may be awarded under legal mandate. Its scope and purpose is procedural merely; it frees the commission, in its hearings, from the haunting fear of reversible error through failure to hold the proof to technical legal requirements, both as to evidence received and evidence rejected. In other words, it does little, if any, more than to write into the procedure of this commission, and into the powers of the courts in review of awards, the wholesome standard embodied by Mr. Justice Stephen in his Indian Evidence Act of 1872 (section 167), which has lately been so cordially praised by Mr. Charles Frederic Chamberlayne in his "Treatise on the Modern Law of Evidence" as embodying "the correct administrative principle" for dealing with claimed errors in evidentiary rulings:

"The *improper admission or rejection* of evidence shall not be ground of itself for a new trial or reversal of any decision in any cases, if it shall appear to the court before which such objection is raised that, *independently* of the evidence objected to and admitted, there was *sufficient evidence to justify the decision*, or that, if the rejected evidence had been received, it ought not to have varied the decision."

The commission, then, was given large immunity from fear of errors in rulings upon evidence, large freedom in admitting any testimony which seemed at the time to promise to become of aid in the final determination. Any finding and award, however, must rest securely in the presence, after the sifting-out process is completed, of sufficient legal evidence to sustain them. Otherwise they must fall. In the case at bar, I conclude that the Compensation Commission was within its discretion in receiving the testimony which it did. Its findings and award must, however, fall, because *all* the "evidence" received upon the vital issues was of a sort unsanctioned in law and lacking in probative force in any tribunal performing a judicial function. The absence of a residuum of legal proof is fatal.

For these reasons, the proceeding must go back to the successor of the Compensation Commission, for ascertainment whether effectual proof cannot be found.