## COATS v. BENTON.

No. 10652—Opinion Filed Dec. 7, 1920.

Rehearing Denied Jan. 5, 1921.

(Syllabus by the Court.)

1. **Guardian and Ward—Appointment of Guardian—Rights of Father.**

A father, being himself competent to transact his own business and not otherwise unsuitable or disqualified under existing law, is entitled to the guardianship of his minor child.

2. **Same—Effect of Minority of Father.**

The minority of the father is not, of itself, sufficient to disqualify the father to be appointed as guardian for the person and estate of his minor child, provided he is competent to transact his own business and not otherwise unsuitable or disqualified.

Error from District Court, Jefferson County; Cham Jones, Judge.

Proceedings for appointment of guardian for Mildred Coats, a minor; R. F. Benton, petitioner, and C. M. Coats, protestant. Judgment affirming order appointing petitioner, and protestant brings error. Reversed.

J. H. Harper and R. D. Welborne, for plaintiff in error.

Green & Pruet and Bridges & Vertrees, for defendant in error.

PITCHFORD, J. On the 1st of September, 1916, plaintiff in error was married to Amanda Benton. At the time of the marriage he was 17 and Amanda 15 years of age. In November, 1917, there was born to the young couple a daughter, Mildred Coats. The parents separated in March, 1918, the

wife returning to the house of her father, defendant in error, and in June, 1918, she secured a divorce and was granted the custody of their minor child. Amanda died at her father's house on the 6th day of February, 1919.

On the 13th day of February, 1919, the defendant in error filed in the county court of Jefferson county his petition to be appointed as the guardian over the person and estate of the minor. The plaintiff in error filed his protest and objection to the appointment of the defendant in error and asked that he be appointed as such guardian. Hereafter the parties will be designated as they appeared in the court below; that is, the plaintiff in error will be designated as protestant, and defendant in error as petitioner. The county judge appointed petitioner as guardian. Protestant appealed to the district court. Upon trial in the district court the judgment of the court was affirmed, from which judgment the protestant prosecutes an appeal to this court.

The trial judge makes, among others, the following findings of fact: That the minor, Mildred Coats, is the owner of her mother's allotment of land, consisting of 200 acres of valuable land, more than 100 acres of which is in cultivation, and personal property to the amount of $1,000 to $2,000, all of which was inherited from her mother, Amanda Coats, who was a member of the Indian tribes, and which she owned at the time of her marriage to the said C. M. Coats. The court further found that the petitioner, R. F. Benton, was a man of rare business judgment and ability, and by virtue of his business qualifications had accumulated large and valuable holdings both in real and personal property; that during the lifetime of his daughter, Amanda Coats, he looked after and conserved her property, and had since her death, and that he was thoroughly capable of managing said estate and had expressed a willingness to do so without charge for his services; that the petitioner had a valuable and comfortable home where the said infant would be surrounded by all the conveniences necessary to her proper growth, development, and education, and that said infant would be properly cared for and its temporal, mental, and moral welfare properly conserved; that the protestant herein, C. M. Coats, the father of said child, had no home to which he could take said child, but that he lived with his three older brothers in a small four-room house, in which also lived, besides the three brothers, his mother and two sisters, one of the sisters having two children, and that they lived on a rented farm and the protestant

had no home of which he was the head to which he could take the child, and that the protestant was a minor, 20 years of age, and not a suitable person to have the care and custody of said infant or the management of her estate.

The conclusion of law reached by the court is as follows:

"The court, therefore, concludes, as a matter of law in this instance, it should be governed by what appears to be for the best interest of the child in respect to its temporal, its mental, and moral welfare, and that these would be best served by the appointment of R. F. Benton, petitioner herein, as guardian of the person and estate of said minor."

In defendant in error's brief we find the following statement:

"Defendant in error desires to state to the court that since this matter was heard in the county court of Jefferson county, Oklahoma, his family has so changed that he felt that the best interest of the said Mildred Coats would be served by a return of said child to plaintiff in error, and he has placed the said Mildred Coats in the care and custody of the plaintiff in error, and consents that the order of the county court of Jefferson county, Oklahoma, be modified and that the said C. M. Coats be appointed guardian of the person of said minor."

The petitioner having realized by brief experience the trouble and inconvenience attendant upon caring for an infant of 17 months of age and the further fact that an old grandfather, however affectionate he may be, is rarely qualified to devote to an infant of the tender years of Mildred the assiduous care necessary to its comfort and well-being during all hours of the day as well as the night, we are not surprised that he, soon after the custody of the child had been awarded to him by the court, realized that the child needed careful female attention, and he was, no doubt, more than anxious to relieve himself of this delicate responsibility by returning the child to the father, where it could be cared for by the grandmother, and where all the proof in the case convincingly shows that the temporal welfare, at least, of the child would be better conserved. In concluding that protestant was not a suitable person to be appointed guardian, the trial court was evidently influenced by the fact that protestant, his two brothers, his mother, and two sisters lived together; that he lived on a rented farm, and had no home of which he was the head to which he could take the child, and that he was under 21 years of age. While the home occupied by the protestant was not palatial, and was not

equipped with modern conveniences, it appears from the evidence, however, that it was a comfortable home. The mother of the protestant was 59 years of age, in the enjoyment of perfect health, and had reared eight children, and if we judge the eight by those mentioned in the evidence, she reared her children to be industrious, economical and moral.

It is true that, in one sense, the petitioner, the grandfather, was in a better position to give to the child a brilliant future than was the father, in so far as money was concerned; but it appears that, by reason of his large business interests, the grandfather had little time to devote to the care of the child, that he was necessarily dependent upon others to give this care and attention, and that his daughter, 16 years of age, was the only member of his family living with him permanently. On the other hand, in the home of the protestant was the old grandmother, who expressed a willingness and a desire to have the child in her home, and here let us say it is rare indeed to find an old grandmother who fails to give a grandchild the same amount of love and affection that she gave to her own children. The unmarried sister of the protestant, living in the same family, 35 years of age, also expressed a willingness to care for the child. In our judgment, it would be difficult to find a home where this infant would receive to a greater extent that loving attention so absolutely needful than it would in this home wherein resided the father, the maiden aunt, and the old grandmother.

Before proceeding further in the discussion of this cause, we cheerfully grant the wish of the petitioner evidenced by his consent and hold that the judgment of the trial court should be modified and that the protestant, C. M. Coats, be appointed guardian of the person of the said Mildred, and in this connection we express the opinion that such custody should have been awarded by the trial court in the first instance.

The petitioner, however, strenuously contends that the protestant was not qualified to be appointed guardian of the estate of his minor child, because he, the protestant, was under 21 years of age. A careful examination of the evidence clearly establishes that the protestant was an industrious, sober, moral boy; that he attended Sunday school and church. It is true he was not possessed of a great amount of worldly goods; he had been reared in a humble home, though respectable. At the time of his marriage, although but 17 years of age, he had passed through the eighth grade at school and had saved up $400 in cash, which indicated industry as well as frugality on his part. While this is not a considerable sum, yet few boys of 17 can make a showing as creditable.

Upon his marriage, he and his wife moved on to the lands allotted to her as a member of the Indian tribes, and successfully farmed the lands for the year 1917; besides, he placed improvements on the premises amounting to something like $250. His wife's father, at the time of the marriage, gave them $2,000. The young husband invested this sum in cattle, and when he and his wife separated he had increased the number of cattle to 24, which were turned over to the wife.

The action of the petitioner, after the trial in the lower court, as well as the evidence, shows that the protestant was a suitable person to have the custody of the person of Mildred, and we would be loath to hold that the estate of the minor should require on the part of the guardian a higher degree of honesty and morality than would be required of a guardian for the person of the minor.

Session Laws 1913, chap. 29, page 59, provides that the father of a legitimate minor, under the age of 14 years, himself competent to transact his own business and not otherwise unsuitable or disqualified under existing laws, the mother being dead, is entitled to the guardianship of the minor.

It will be observed that the foregoing statute makes no distinction between the guardianship of the person and the guardianship of the estate, but says that "if the father is competent to transact his own business and not otherwise unsuitable or disqualified." It nowhere makes minority a disqualification, but broadly and specifically declares that a father has the right to be appointed guardian of his minor child, provided "he himself is competent to transact his own business and not otherwise unsuitable or disqualified."

Section 1140, Rev. Laws 1910, provides that a male person of the age of 21 years and a female person of the age of 18 years, being otherwise qualified thereto and all persons upon whom the rights of majority have been conferred, and corporations to the extent and in the manner authorized by law, owning real estate in the state of Oklahoma, may mortgage, convey, or otherwise dispose of, or make any contracts relating to real estate or any interest therein; and provides, further, that persons of whatsoever age, who been legally married and who are otherwise qualified, may dispose of and make contracts relating to real estate acquired after marriage.

Section 5523, Comp.. Laws of Oklahoma 1909, provides:

"The marriage of a minor ward terminates the guardianship; and the guardian of an insane or other person may be discharged by the judge of the county court when it appears to him on the application of the ward or otherwise, that the guardianship is no longer necessary."

In Kirkpatrick v. Burgess, 29 Okla. 121, 116 Pac. 764, Mr. Justice Dunn, construing this statute, says:

"Under the statutes of the state, as we have noted above, the mere marriage of the minor * * * qualifies him to sell his land; hence the necessity of any supervision on the part of the probate court or of any guardian does not exist. Such parties, under the state statutes, so far as the exercise of this right is concerned, are no longer regarded as minors. They then become fully endowed with all of the rights of one who has attained his majority."

The act of 1913, supra, contemplates that if a father is competent to transact his own business, then he is entitled to the guardianship of his minor child, unless it should appear that he is otherwise unsuitable or disqualified, but not disqualified by the fact that he is under 21 years of age.

The term "qualified," as used in section 1140, supra, wherein it is provided that persons of whatsoever age who have been legally married and who are otherwise qualified, may dispose of and make contracts relating to real estate acquired after marriage, should be given the same meaning in the act of 1913 as was evidently intended in section 1140, and that is, not of unsound mind and not a spendthrift.

A minor over 18 years of age can transact business in many respects wherein and whereby he would be bound.

Section 883, Rev. Laws 1910, provides:

"A minor cannot give a delegation of power, nor, under the age of 18, make a contract relating to real property or any interest therein, or relating to any personal property not in his immediate possession or control, except as otherwise specially provided."

Section 884, Id., provides:

"A minor may make any other contract than as above specified in the same manner as an adult, subject only to his power of disaffirmance under the provisions of this chapter."

Section 886, Id., provides:

"A minor cannot disaffirm a contract, otherwise valid, to pay the reasonable value of things necessary for his support or that of his family, entered into by him when not under the care of a parent or guardian able to provide for him or them."

Section 887, Id., provides:

"A minor cannot disaffirm an obligation, otherwise valid, entered into by him under the express authority or direction of a statute."

If the Legislature has the authority to give district courts jurisdiction to remove the disabilities of minority and clothe the minor with all the authority and power of an adult in the transaction of his private business, certainly it would appear that the Legislature has authority to say that the father, though a minor, should not be deprived of his right to be guardian, notwithstanding he has not reached 21 years of age, and this is practically what the Legislature has done.

We conclude that by virtue of the act of 1913, supra, the trial court was in error in holding that protestant, not having reached the age of 21 years, was, for that reason, disqualified to act as guardian for the person and estate of his minor child.

The judgment of the trial court is, therefore, reversed.

RAINEY, C. J., and JOHNSON, McNEILL, and HIGGINS, JJ., concur. COLLIER, J., dissents. BAILEY, J., disqualified.