## UNITED STATES FIDELITY & GUARANTY CO. et al. v. CRUCE et al.

No. 18111.   Opinion Filed Jan. 17, 1928.

(Syllabus.)

1. **Master and Servant—Workmen's Compensation Law—Lack of Prejudice to Employer from Claimant's Failure to Give Written Notice of Injury.**

In a proceeding for compensation before State Industrial Commission, where the evidence shows that respondent had actual notice of injury and furnished immediate medical attention and made report two days after the injury to the Commission, giving full details of such injury, and where, at the hearing, respondent, being present and represented by counsel, offered no evidence to show respondent had been prejudiced by failure of claimant to furnish written notice, such failure furnishes no ground for reversing or remanding the cause.

2. **Same—Award of Compensation Sustained by Evidence.**

Evidence examined; held, sufficient to support the finding that claimant suffered an accidental injury arising out of and in the course of his employment and the order for compensation based thereon.

3. **Same—Right of Minor Employee to Maintain Proceeding for Compensation.**

Under the Workmen's Compensation Law of Oklahoma, an 18 year old employee may maintain in his own name a proceeding against his employer for compensation for an accidental injury arising out of and in the course of his employment.

Commissioners' Opinion, Division No. 2.

Proceeding for compensation before State Industrial Commission by George Allen Cruce against the Shawnee Milling Company, employer, and United States Fidelity & Guaranty Company, insurance carrier, respondents. Compensation awarded. Appeal by respondents. Affirmed.

Rittenhouse, Lee, Webster & Rittenhouse, for petitioners.

The Attorney General, for respondents.

BENNETT, C.   The parties will be referred to as they appeared before the Industrial Commission.   George Al'en Cruce,

an employee of the Shawnee Milling Company, was injured while engaged in his employment on October 7, 1926, and thereafter filed his claim with the State Industrial Commission for compensation.

Claimant was engaged in stacking sacks of bran, and when he started to lift the last sack in the truck and throw it up on the fourth tier, the claimant felt something pull loose in the right side of his body, and he immediately stopped work. He did not become unconscious, but when he felt something pull loose, he was very sick and much nauseated.

After a hearing before the Industrial Commission, he was adjudged entitled to compensation, and the respondent and the United States Fidelity & Guaranty Company, the insurance carrier, appeal.

Three points are presented for reversal of the case by the respondents: (1) that the award is erroneous because there was no finding in said order, either that notice was given the respondents, or that the giving of such notice was excused; (2) that the finding of the Commission that the claimant sustained an accidental injury while in the course of his employment and arising out of the same is not supported by sufficient evidence; (3) that said claimant is a minor and not competent to maintain his claim for compensation before the Commission.

We will treat these questions separately in the order in which they are presented.

1. Did the respondent have notice? The record in this cause contains an employer's first notice of injury signed by the respondent, Shawnee Milling Company, by W. H. Williams, and dated the 9th of October, 1926, two days after the injury, giving the employer's name, address and business, and the employee's name, age, address, occupation and description of injury complained of: that the respondent gave him immediate medical attention, and that he was taken first to Dr. Carson and then to Dr. Walker for treatment.

Employer's report is admissible for this purpose. First National Bank of Milwaukee v. Industrial Commission, 161 Wis. 526, 154 N. W. 847. The objection that the same was not offered in evidence is not available. Anderson v. Miller, etc., Co. (Wis.) 170 N. W. 275; Mary Carroll's Case, 225 Mass. 203, 114 N. E. 285; Borgnis v. Falk Co., 147 Wis. 327, 133 N. W. 209, 37 L. R. A. (N. S.) 489; Northeast Oklahoma R. Co. v. State Industrial Commission, 88 Okla. 146, 212 Pac. 136; Little Fay Oil Co. v. Stanley, 90 Okla. 265,

217 Pac. 377; Little Fay Oil Co. v. Killian, 90 Okla. 267, 217 Pac. 379. Actual notice supplies the defect. Parker-Washington Co. v. Industrial Board (Ill.) 113 N. E. 976; Wabash Ry. Co. v. Industrial Commission (Ill.) 121 N. E. 569; Okla. Gas & Elec. Co. v. Thomas, 115 Okla. 67, 241 Pac. 820; Graver Corporation v. Industrial Commission, 114 Okla. 140, 244 Pac. 438.

Dr. Walker testified that Mr. Williams talked to him in the hospital about claimant's injury. Claimant testified that Mr. Williams was superintendent of respondent, and that at the time of injury he took him to Dr. Carson to be treated. Mrs. Lucille E. Gould, mother of claimant, also testified that Mr. Williams came over and saw them at the hospital that night, and told her Mr. Douglas was the other man in the car with Mr. Campbell when the claimant was brought home sick. We think this abundantly sufficient to show that the respondent had actual and immediate notice of the accident.

2. Did claimant sustain accidental injury while in the course of and arising out of his employment? The evidence shows claimant was picking up a 100-pound bag of bran from the bottom of a truck, and throwing it upon the top of three or four tiers of bags, and as he attempted to throw the bag he felt something tear loose in his side.

The following question was asked the doctor:

"Q. Did this strain such as he described to you in your opinion rupture that u'cer which had been there for sometime? A. It occurred during the violent strain. The stomach was harder, it ruptured during the violent strain. It was not the condition of the bowel that caused it to rupture. It was the strain that caused it to rupture."

Dr. Walker also testified that he could give no opinion as to the time the ulcer had been there; that there were no symptons of an ulcer so far as he could tell; that such ulcers in young people last over a long period of time with a tendency to heal themselves; that is their general tendency. That perforation of such ulcers in older people occurs sometimes without a strain.

"Q. (On cross-examination) Then this ulcer might have bruised or perforated without the claimant having put himself to a strain, isn't that a fact? A. Older people. I think so; haven't heard of it in younger people. * * * Q. Doctor, you say that a duodenal ulcer might become ruptured without a strain or an injury? A. Yes, sir. In older people especially. I might say that duodenal ulcer occurs ordinarily in people from 30 to 60, or may occur in people young-

er than that, even very early in life, but the general tendency of a duodenal ulcer in younger people especially is to heal itself, and what experience I have had in 30 years, I have never seen it—no record in the hospital that there has ever been a rupture of duodenal ulcer to patient of 20 years of age, by any means but violence on the stomach, easily. Now, above that age, the ulcer will rupture by a full stomach, or full intestines, or maybe lying in bed. Q. The cases you have referred to, doctor, will a strain have a tendency to rupture the duodenal ulcer? A. In this special case, I think positively, yes, sir."

In the case of Southwestern Surety Ins. Co. v. Owens (Tex.) 198 S. W. 662, the court held:

"Where lifting a sack of bran caused a blood vessel in servant's lung to burst, it was an accidental injury within the meaning of the Workmen's Compensation Act, and it was immaterial that it had bursted before, but had healed over and might burst again."

And in the case of Roland v. Employer's Casualty Co., 290 S. W. 895, a Texas case, it was held that a perforation of the appendix caused by lifting came in the course of the employment, and was within the meaning of the Employers' Liability Act, even though the deceased had a predisposition towards appendicitis.

In the case of Dame v. Federal Mining & Smelter Co., 119 Okla. 132, 249 Pac. 277, it was held that the Supreme Court will not review or disturb an award by the State Industrial Commission where there is any competent evidence to support the same. We hold the evidence sufficient.

3. Did the claimant, a minor, have capacity to bring this proceeding for compensation in his own name? This is a new question. It has not been presented for determination before any appellate court in the United States. Its answer depends upon the nature and purpose of our Industrial Commission, and whether or not our general civil procedure applies to them.

The year 1915 witnessed the adoption of compensation acts in a large number of states. Their precedents, in large measure, were found in similar acts which had theretofore been passed in England. These acts were designed to correct a well-recognized evil. Prior to their enactment, if an employee were injured, while engaged in his employment, he could recover for such injury only when the same could be attributed to the negligence of the employer; and, if the employee were informed of the danger of the employment, he himself was held respon-

sible for the injury. So that the workman who depended upon his labor for the support of his family was tempted to incur risks, to which, as a matter of humanity, he should not have been exposed. Looked at from the coldly legal point of view, if one, for the sake of employment, accepted or continued in it with a knowledge of the risks, he must trust to himself to prevent injury, and under such conditions many employees were tempted to incur risks and suffered injuries; and the ensuing litigation often meant great injustice to one or the other and often to both of the interested parties. Reform demanded greater security for the employee and an amelioration of the nightmare of lawsuits that resulted to the employer. These considerations resulted in a compromise between the employers and the employees. Both had suffered under the old system—the employers by reason of heavy judgments which went largely to attorneys' fees and the workmen through the loss of time, the waste, costs and uncertainties of litigation. So that the one was willing to forego a jury trial in consideration of a much smaller sum which was certain to be paid. Both wished a new system. The intention of these acts, therefore, is to prevent workmen and their dependents from becoming objects of charity by affording reasonable compensation for all such calamities as are incidental to hazardous employment. Injury to the employee is now, therefore, no longer regarded as the result of negligence, but as the necessary product of industry, and, as such, to be compensated by the industry.

Assaults from every angle have been made upon our compensation laws upon the claim that they were unconstitutional; that they violated our fundamental law with respect to jury trial; that they limited the recovery in personal injury cases; that they interfered with the freedom of contract; that they took money and property without due process of law; that they imposed a penalty upon a person who, or an industry which, had been guilty of no negligence or default, and compelled the payment of compensation to one injured perhaps through his own negligence and without a corresponding default in the party called upon to pay. While these assaults met with measurab'e success at the outset, they have all fallen harmless as against the stability and legality of the modern compensation law. A further complaint has been made against these laws because they have transgressed or ignored the old procedure, the technical pleading, the strict rule of evidence, the burden of proof,

and many of the ancient standbys that were the product of and peculiar to our laws, which were the heritage of the long ago.

These enactments are now almost as much a matter of public necessity in our industrial life as are our industries themselves. One authority has said:

"The purpose of all Workmen's Compensation Acts and industrial insurance laws, however, is to abolish the sporting rules of the common law; and even those acts which are optional contain provisions calculated to effect this result. The discredited doctrines of assumption of risk and fellow service, and even the defense of contributory negligence, are declared to be abolished." 28 R. C. L. 733-734.

What now is the legal status of these commissions, and what is the resulting procedure applicable?

Standard Encyclopedia of Procedure, vol. 26, page 537, holds:

"The members of an industrial accident board or commission, under some statutes, have been held not to be judicial officers." (Citing cases from Connecticut, Indiana, Iowa, Maryland, Massachusetts, Michigan, Ohio, Texas, Utah, and Wisconsin.)

At page 544 of the same volume this authority says:

"Generally, the person or persons to whom the compensation is payable may maintain the proceeding for compensation, whether they be beneficiaries or personal representatives. * * * The act sometimes contemplates or provides that proceedings may be instituted by the personal representative of a deceased employee, or by the wife of an injured husband who deserts or fails to provide for his family, or by the guardian of a minor beneficiary, **though the appointment of a guardian is unnecessary either in the case of injury to a minor, or of a minor beneficiary, where the statute apparently does not contemplate or require it.**"

Cited in support thereof are the cases of Menominee Bay Shore Lumber Co. v. Industrial Commission, 162 Wis. 344, 156 N. W. 151 (holding that the Commission is not a court); Coster v. Thompson Hotel Co., 102 Neb. 585, 168 N. W. 191, and Woodcock v. Walker, 170 App. Div. 4, 155 N. Y. Supp. 702. At page 547 of Standard Encyclopedia of Procedure, vol. 26:

"The procedure may be prescribed by the act itself, or the Commission may be authorized to provide it." (Citing Massachusetts Bonding & Ins. Co. v. Industrial Acci. Comm.' 176 Cal. 488, 168 Pac. 1050.) This case holds:

"The Workmen's Compensation Act em-

powers the Commission to adopt reasonable and proper rules of practice in proceedings before it. Any notice or method of procedure which does not transgress the constitutional mandate regarding due process of law, or the provisions of the act itself, is within the power of the Commission. It is not obliged to follow the methods in use in the ordinary courts of the land."

In Hagenback & Great Wallace Shows Co. v. Leppert, 66 Ind. App. 261, 117 N. E. 531, in the body of the opinion, it is said:

"We deem it advisable to state that we have not considered the assignment of error that 'the Commission (board) erred in overruling appellant's amended plea in abatement,' for the following reason: The rules of procedure prescribed in the Civil Code are not available in matters before the Industrial Board."

In the case of Carroll v. Knickerbocker Ice Co., 169 App. Div. 450, 155 N. Y. Supp. 1, discussing the statute which provided that the Commission should not be bound by the technical formal rules of procedure, etc., the court said:

"As to proceedings before the Commission, these two sections wholly abrogate the substantive law of evidence—abrogate the common law, the statute law, the rules of procedure formulated by the courts, and all the technicalities respected by the legal profession. The Commission is authorized by this section, it seems, to make its investigation in any manner that it chooses, wholly unfettered by any law previously invented by man. This is the spirit of the statute. The Commission is to be bound neither by custom nor by precedent. The trials before the Commission are to be summary, speedy and informal. The very instant that the old rules of evidence are invoked, the informal character of the hearing disappears, and the rigid, formal rules of procedure and all the technicalities incident to the practice of the law will grow up around the Commission, hampering and delaying it, working inconvenience and hardship upon the claimants and defeating the intent of the law."

In State v. District Court, 129 Minn. 423, 152 N. W. 838, it is held in substance that the procedure prescribed by the act, rather than the provisions governing civil actions, must be followed.

As to the character of the hearing, Standard Encyclopedia of Procedure, vol. 26, at page 550, provides:

"The Commission should see that all available and necessary evidence is produced, **notwithstanding the stipulations of the parties.**" Frankfort Gen. Ins. Co. v. Pillsbury, 173 Cal. 56, 159 Pac. 150.

Now, examining the Oklahoma Workmen's Compensation Law, it appears: First, that our Industrial Commission is composed of three commissioners appointed by the Governor, each of whom is under bond in the sum of $10,000, conditioned for his faithful performance of the duties of the office, subject to removal by the Governor for inefficiency, neglect of duty, or misconduct in office after an open hearing. It further appears that the Commission may appoint inspectors to take evidence and conduct investigations in the same manner and with the same power as the Commission; that under section 7318, the Commission is given power to adopt all necessary rules not inconsistent with the act to take care of the administration of the powers given the Commission, including the method and time of investigations, conduct of hearings, and carrying into effect the provisions of the act creating the Commission. The Commission, under the power given, has promulgated comprehensive rules as to procedure, one of which appears to be No. 28, the latter part of which reads:

"Such hearings shall be conducted in such manner as to ascertain the substantial rights of the parties, and the Commission, a commissioner, inspector or arbitration committee therein, shall not be bound by common law or statutory rules of evidence or by technical or formal rules of procedure."

Rule No. 32 is:

"The rules of the State Industrial Commission are subject to amendment at any time; and the Commission will adopt additional rules whenever, in its judgment, the same are advisable."

From this it will be observed that the Commission has acted, and is now acting, under the power set out in the legislative act of creation without respect to our Code Procedure. It will be observed, too, that under definition 4 of article 1 of the Workmen's Compensation Law, "employee" means "any person engaged in manual or mechanical work or labor in the employment of any person, firm or corporation carrying on a business covered by the terms of this act," etc. Comp. St. 1921, sec. 7284.

Section 7285, C. O. S. 1921, provides:

"Every employer subject to the provisions of this act shall pay, or provide, as required by this act. compensation according to the schedules of this article for the disability of his employee resulting from an accidental personal injury. * * *"

Paragraph 2 of section 7285, Comp. St. Supp. 1926:

"The person entitled to such compensation

shall have the right to recover the same directly from his immediate employer, the independent contractor or intermediate contractor, and such claims may be presented against all of such persons in one proceeding. * * *"

Section 7294, Id., declares:

"Any time after the expiration of the first five days of disability on the part of the injured employee, a claim for compensation may be presented to the Commission. If the employer and the injured employee shall reach an agreement as to the facts with relation to an injury, for which compensation is claimed under this act, * * * such agreement shall be approved by the Commission **only when the terms conform to the provisions of this act.** The Commission **shall have full power and authority to determine all questions in relation to payment of claims for compensation under the provisions of this act.** * * * The Commission may, before making an award, require the claimant to appear before an arbitration committee appointed by it and consisting of one representative of employees, one representative of employers, and either a member of the Commission or a person, especially deputized by the Commission to act as chairman. * * * The decision of the Commission shall be final as to all questions of fact, and, except as provided in section 7297, of this article, as to all questions of law."

The act provides for an appeal to the Supreme Court by a dissatisfied party, where the controversy shall be heard in a summary manner and have precedence as to time of hearing over ordinary civil cases.

Section 7299 provides payments of compensation in accordance with the method of payment of the wages of the employee at the time he was injured, and shall be so provided for in the award.

Section 7339:

"**Personal Injuries—Court Jurisdiction—Superseded by Commission.—The right of action to recover damages for personal injuries, * * * is hereby abrogated, and all jurisdiction of the courts of this state over such cases * * * is hereby abolished.**"

It seems abundantly clear from the provisions of this act, that the Legislature intended that the scheme should be complete and comprehensive. It marked out the path and blazed the way in a new field. The act completely divorced the disposition of cases coming under the jurisdiction of the Commission from the law courts, from the practice and from the procedure, as well as from the delays and the heart-breaking uncertainties and expense. It set up a new tribunal, clothed with new powers, to do a new job and in a new way; and, so far as we know, the various Commissions in the several states have proceeded upon the theory that their powers, taken from the legislative acts of creation, were complete and ample for the purpose of carrying out the object for which they were created.

There is before the writer of this opinion the Eleventh Annual Report of the State Industrial Commission of Oklahoma, and some of the information is astoundingly significant here. For instance, the number of accidents reported for the fiscal year September 1, 1925, to September 1, 1926, was 49,837. The aggregate time lost as a result of these accidents, if reduced to one man's time, would equal more than 2,800 years. Compensation awarded amounted to $1,107,997. The Commission operated during the period on a total appropriation for all purposes of $54,482.10, making the average cost per case of less than $1.07; and, while many of these accidents either were not compensable or for very small amounts, nevertheless, if the amount of compensation awarded were divided equally between those suffering the accidents, the amount of compensation allowed per case would be about $22. We are informed that something like one-fifth of those who present claims for compensation are minors. To be conservative, let us assume that out of the 49,000 or 50,000 accidents there were 15,000 compensable cases, and that one-fifth of these were the cases of minors. If it were held that a guardian or next friend had to be appointed in such case, this would necessitate the appointment of such numbers as would involve almost untold expenditure of time and a great deal of court costs and attorneys' fees, for, if guardians are not paid they will not qualify, and if they do qualify, they must inform themselves so as to act intelligently, or they are worse than useless. In a vast number of cases the amount of compensation would be substantially less than the costs necessary to secure the appointment and the intelligent attention of a proper guardian. And to hold that this was a part of the legislative intent, in fashioning an act for the purpose of directly, quickly and economically administering the matter of compensation, freed from technical costs and court delay, is unthinkable.

This report contains another rather striking bit of information. In the year 1925, 46 cases were appealed from the Commission to the Supreme Court, resulting in seven reversals, 37 affirmations or dismissals, and two pending. In 1926, 37 cases were

appealed, three were reversed, 15 affirmed or dismissed, and 19 pending. This, to our minds, is high proof of the correct, economical and satisfactory functioning of this Commission under the law as at present interpreted.

It is quite true that we have found no case in the United States holding directly that it is not necessary for a minor to bring his proceeding for compensation through a guardian, but we do find two or three cases from Wisconsin, Foth v. Macomber & Whyte Rope Co., 154 N. W. 369, and Menominee Bay Shore Lumber Co. v. Industrial Commission, 162 Wis. 344, 156 N. W. 151, holding this doctrine, but those cases are predicated upon a section of the Compensation Act which reads as follows:

"Every person in the service of another under any contract of hire, express or implied, oral or written, including aliens, and also including minors who are legally permitted to work under the laws of the state (who, for the purpose of sections 2394-8, shall be considered the same and have the power of contracting as adult employees). * * *"

And we find a few states that have in their Workmen's Compensation Acts similar statements. but the majority have no such provision. We do not regard the Wisconsin cases as authority, and hence we have no direct authority, but the acts, and cases following the acts, treating minors as adults in such cases, emphasize the thought that guardians are not necessary and would perform no useful purpose therein.

Under the statutes of Oklahoma, the courts have the right to confer majority rights upon minors without limit as to the age of the minor. Sections 8099 to 8102, C. O. S. 1921. Chapter 32, entitled "Contracts," C. O. S. 1921.

Can a minor legally become an "employee" under the terms of the act?

Section 4977:

"A minor may make any other contract than as above specified (delegation of power, contract relating to real property or disposition of personal property not in possession) in the same manner as an adult, subject only to his power of disaffirmance under the provisions of this chapter." Grissom v. Beidleman, 35 Okla. 343, 129 Pac. 853.

Section 4978 follows:

"In all cases other than those specified herein, the contract of a minor, if made while he is under the age of 18, may be disaffirmed by the minor himself, either before his majority or within one year's time afterwards; or in case of his death within that period, by his heirs or personal representatives; and if the contract be made by the minor while he is over the age of 18, it may be disaffirmed in like manner upon restoring the consideration of the party from whom it was received or paying its equivalent with interest."

Section 4980 is:

"A minor cannot disaffirm an obligation, otherwise valid, entered into by him under the express authority or direction of a statute." Coats v. Benton, 80 Okla. 93, 194 Pac. 198.

In the case at bar the claimant was 18 years old, and had the power under our law to contract and to sell his services to his employer. It would be passing strange if he could not compel the payment of compensation for injury when our courts hold that such sum so provided is not damages for his disability, but in the nature of wages. Under our practice before the Industrial Commission, where the claimant is not represented by counsel, the development of claimant's case is taken over by the Commission. This practice is general and understood by the bench and bar and is generally regarded as proper. What peculiar benefit could a guardian or next friend be in such circumstance? These untutored claimants are generally, we think, regarded as the objects of special care by the commissions, and their interests are carefully guarded. This procedure, so far as we know, has never been protested, even by those who are called upon to respond in compensation, for the economic administration of the act has, of late years, met approval and co-operation of individual and industry alike.

Diligent counsel for respondent has been able to find no case supporting his contention that this proceeding should be brought by guardian or next friend of claimant, and, with a very diligent search, we have been unable to find any such authority. Among many other authorities we have exhausted the latest Workmen's Compensation by Schneider, 1922 Honnold's excellent work on the same subject, and Negligence & Compensation Cases, and we find no case sustaining the contention. The very fact that none has been found or can be found is proof that the authorities generally assume that the very purpose of the act is to make it unnecessary to comply with our statute of Civil Procedure, and to permit these administrative boards and Commissions to summarily and promptly handle, without delay and without unnecessary cost, these inevit-

able incidents of our rapidly growing industries. In the absence of some strong, sound reason indicating the vital necessity of adherence to our Code of Civil Procedure, we feel we should indulge the presumption that those administering, and those affected by, the Compensation Act, have heretofore properly construed their rights and duties in the premises under the act, and for that reason, and others indicated, we hold that it was not error for the Commission to overrule the motion by respondents to dismiss this cause, and it is therefore adjudged that the action of the Commission should be and the same is in all respects affirmed.

DIFFENDAFFER, HERR, HALL, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) Workmen's Compensation Acts—C. J. p. 105, §102; anno. L. R. A. 1917D. 139; L. R. A. 1918E, 562; 28 R. C. L. p. 825; 5 R. C. L. Supp. p. 1579; 6 R. C. L. Supp. p. 1764. (2) Workmen's Compensation Acts—C. J. p. 115, §114. (3) Workmen's Compensation Acts—C. J. p. 108, §105 (Anno).