[Civil No. 2569. Filed December 27, 1926.]

[250 Pac. 1060.]

CITY OF PHOENIX, a Municipal Corporation, F. A. JEFFERSON, Mayor of the City of Phoenix, F. A. JEFFERSON, A. L. BOEHMER, J. A. R. IRVINE, LUKE HENDERSON and FRED JACOBS, as Members of and Constituting the City Commission of the City of Phoenix, and HENRY RIEGER, as Superintendent of Streets of the City of Phoenix, Arizona, Appellants, v. SOUTHWEST FLOUR & FEED COMPANY, a Corporation, Appellee.

Mr. W. L. Barnum and Mr. J. E. Nelson, for Appellants.

Messrs. Sloan, Holton, McKesson & Scott, for Appellee.

ROSS, J.—This suit was brought by appellee, Southwest Flour & Feed Company, to enjoin the defendants from letting a contract to pave Sixth Street, from the south line of Washington Street to the north alley line of the alley south of Jackson Street, of the City of Phoenix.

The resolution of intention declared that the work and improvement proposed was of more than local or ordinary public benefit, and made the cost and expense of said work and improvement chargeable upon a district.

The total frontage of property fronting upon Sixth Street and parts of streets contained within the

limits of said assessment district amounts to 3,587.5 lineal feet. The total frontage of Sixth Street is 1,957.5 lineal feet, 137.5 lineal feet of which belonged to the school board of the public schools of the City of Phoenix.

Within the time allowed by law the owners of 912.5 lineal feet fronting on Sixth Street filed with the city clerk a written protest against the improvement, the appellee being one of such owners and protestants. It is contended by appellee in the complaint that this is a majority of the frontage facing on Sixth Street, providing the school district frontage is deducted, and that the protest was sufficient to bar or suspend the improvement.

The frontage of 912.5 feet represented in the protest is a majority of the frontage facing on Sixth Street if the school district frontage be deducted, but it is not a majority of the frontage of property upon Sixth Street and parts of streets contained within the limits of the assessment district.

It appears from the complaint, and in this the appellants seem to acquiesce, that the case was made and tried out in the lower court upon the theory that a majority of the frontage on Sixth Street by protesting could suspend the work. It is frankly stated by the appellants that there has been doubt in the minds of the city commission and property owners as to whether the school district frontage should be computed in arriving at the majority of frontage necessary for a protest. This question, however, is not presented unless it be held that the law intends that the work may be suspended by a protest of a majority of the frontage directly facing upon the improvement rather than a majority of the frontage of the district.

The lower court overruled the demurrer to the complaint and gave judgment to the appellee. In doing so it evidently construed the law as authorizing

a majority of the frontage on the improvement as being able to suspend the work and improvement by protest.

The statute, Civil Code of 1913, paragraph 1957, as amended by chapter 25, Laws of 1922, is as follows:

"The owners of a majority of the frontage of the property fronting on said proposed improvement or when the cost of said improvement has been made chargeable upon a district, then the owners of a majority of the frontage of property fronting upon the proposed improvement, together with the owners of a majority of the frontage of property fronting upon the streets or parts of streets contained within the limits of said assessment district, may make a written protest against said improvement within fifteen days after the date of the last publication of the resolution of intention, or within fifteen days after the completion of the posting of notices of the proposed improvement by the superintendent of streets if such date be subsequent to the day of said last publication."

As above stated, the total frontage in the assessment district is 3,587.5 lineal feet, and, under the above statute, that total is the basis upon which the protest must be computed. In other words, the protest in order to be effective would require the signatures of the owners of a majority of the total frontage of 3,587.5 lineal feet. The language of the law is too plain and clear to admit of any other construction. We think the appellee must be held to concede this to be true, for in its complaint it sets up and relies upon a ruling of the city commission, which, it says, was publicly announced some years ago, to the effect "that irrespective of the fact that an assessment district may have been formed as prescribed by law upon which the cost and expense of the improvement of any street should be chargeable, that in the event a protest was filed by the owners of a majority of

property fronting upon said proposed improvement that said city would thereafter consider such a protest a bar to further proceedings in said proposed street improvement and would not reject such a protest." It is also alleged that such ruling has been uniformly followed by the city commission.

Of course the city commission had no right to announce such rule in violation of the statute, and such a rule could never ripen into law however long or often followed. The question really sought to have determined by this court, to wit, whether the school district frontage should or should not be included in computing the necessary percentage of frontage to a successful protest, is not in the case. Even if the 137.5 lineal feet owned by the school district were deducted, the 912.5 lineal feet represented in the protest would not be sufficient.

It is palpably apparent that error was committed in overruling the general demurrer to the complaint.

The judgment is reversed and the cause remanded, with directions that the demurrer be sustained.

McALISTER, C. J., and LOCKWOOD, J., concur.