[Civil No. 2828. Filed November 14, 1929.]

[282 Pac. 42.]

GUY A. AMISH, Appellant, v. CITY OF PHOENIX and PACIFIC CONSTRUCTION COMPANY, a Corporation, Appellees.

22

Mr. J. C. Niles and Mr. John W. Ray, for Appellant.

Mr. Charles H. Young, for Appellee City of Phoenix.

Messrs. Kibbey, Bennett, Gust, Smith & Lyman, for Appellee Pacific Construction Company.

LOCKWOOD, C. J.—Guy Amish, hereinafter called plaintiff, brought this suit against the City of Phoenix, a municipal corporation, and Pacific Construction Company, a corporation, hereinafter called defendants, to enjoin the proposed improvement of Sheridan Street. The facts were stipulated in the lower court and a judgment was rendered there in favor of defendants, whereupon plaintiff brought the matter before us for review.

There are three assignments of error which raise three legal questions. The first is that the court erred in holding the protest against the improvement insufficient. It appears that the improvement was to be made by assessing the cost to a district rather than merely to the property abutting on the street improved. A protest was filed in due time with the proper authorities, signed by the owners of a considerable majority of the frontage of property abutting on the proposed improvement, but it was not signed by the owners of a majority of the frontage of property fronting upon all the streets or parts of streets contained within the limits of the assessment district. Plaintiff urges that, since the Street Improvement Act (Civ. Code 1913, pars. 1953–1977, as amended) provides by its terms it should be liberally construed, and since by far the greatest cost of the improvement will be paid by the protesting owners of the property abutting on the improvement, we should hold the protest sufficient. It may be it would be fairer to allow a protest signed by those who will pay the majority of the cost of the improvement to prevent the work. The legislature, however, did not see fit so to provide, but enacted (Civ. Code 1913, par. 1957, as amended by Laws 1927 [4 Sp. Sess.],

chap. 25) that a protest must be signed by a majority both of the abutting property owners and of the entire frontage in the district. The case of *City of Phoenix* v. *Southwest Flour & Feed Co.*, 31 Ariz. 219, 250 Pac. 1060, is decisive on this point, and the first assignment of error is not well taken.

The third assignment of error is that the contract for the improvement should have been executed in the name of the City of Phoenix by the city manager, as provided by the city charter, rather than by the superintendent of streets, as provided by the general statutes (Civ. Code 1913, par. 1961, as amended by Laws 1917, chap. 34, § 1). If this were an ordinary contract of the city, there might be some merit in the contention, but contracts for paving which is to be paid for by special assessment of private property are executed under the provisions of subdivision 45, section 2, chapter 4 of the city charter, which expressly authorizes the use of the state law in force at the time of the improvement, unless otherwise provided by ordinance. A provision of this nature is valid as an adoption of the state law for the purpose intended. *Buntman* v. *City of Phoenix*, 32 Ariz. 18, 255 Pac. 490. Since the contract was executed as provided by the statute, the third assignment is without merit.

The second assignment of error presents a more serious question. The City of Phoenix in 1913 adopted a freeholders' charter under the provisions of section 2, article 13, of the Constitution of Arizona. Section 2, chapter 1, of such charter, defines the boundaries of the city. At the time of the adoption of the charter and the fixing of the boundaries therein, Sheridan Street, so far at least as the part involved in the present action is concerned, was not embraced within the city limits. After the adoption of the charter, and before the attempted improvement of the street, the city commission of Phoenix,

by ordinance regularly adopted in conformity with paragraph 1908, Revised Statutes of 1913 (Civil Code), attempted to include said Sheridan Street within the city limits. It is contended, however, by plaintiff that such inclusion is in effect an amendment of the charter of the city, and that amendments to such charter can only be made in the manner set forth in section 2, article 13, of the Constitution, which method it is admitted was not followed in annexing the territory in question.

A similar question has been before the Supreme Courts of several states, and the authorities are not entirely harmonious. The case chiefly relied upon by plaintiff is that of *City of Westport* v. *Kansas City*, 103 Mo. 141, 15 S. W. 68. The facts in that case are much similar to those of the case at bar. Kansas City was governed by a freeholders' charter adopted under a constitutional provision in principle like ours. There was an attempt to extend its limits without amending the charter in the manner provided for in the Constitution. The court held, first, that the ordinance extending the limits of the city was an amendment to the charter, and, second, that the only way it could be amended was the one set forth in the Constitution.

The Supreme Court of California held in the case of *People* v. *City of Oakland*, 92 Cal. 611, 28 Pac. 807, that the annexation of additional territory was an amendment of the city charter, but did not therein pass on the method whereby such an amendment must be adopted. Subsequently thereto, but under a constitutional provision differing in important particulars from ours, that court held that changes might be made in the boundaries of cities having freeholders' charters by general laws adopted by the legislature. *People* v. *City of Coronado*, 100 Cal. 571, 35 Pac. 162; *People* v. *City of Oakland*, 123 Cal. 598, 56 Pac. 445;

*People* v. *City of Long Beach,* 155 Cal. 604, 102 Pac. 664.

On the other hand, the Supreme Court of Oregon in the case of *Thurber* v. *Henderson et al.,* 63 Or. 410, 128 Pac. 43, 44, discussing a constitutional provision allowing freeholders' charters, and forbidding the legislature to amend any municipal charter, and the question of whether the boundaries of a city could be changed under a general law, said:

"Under its provisions we take it that the people of a particular locality . . . may, by vote, adopt a charter and, under such provisions as are now or may hereafter be provided by law, may enact new charters or amend those .already in existence without interference by the state Legislature. . . . We are of the opinion that the true intent of the amendment above quoted was to give to cities and towns the authority to enact and amend charters affecting property and other rights within the boundaries of such cities and towns, and that, so far as legislation outside of these boundaries is concerned, they must find it elsewhere than in this amendment. Inside their boundaries, and in relation to matters purely local, they are, as regards regulation by the state Legislature, supreme; *beyond these boundaries they are invested with no power except that which the Legislature may see fit to grant them in common with all other cities, and under like circumstances.* . . . The Legislature, by section 3209, L. O. L. (Sess. Laws 1893, p. 120), provided a plain, easy method by which an incorporated city could acquire new territory." (Italics ours.)

The reasoning of the Supreme Court of Oregon seems to us well founded. If it were otherwise, and cities operating under freeholders' charters were not affected by general laws regarding the acquiring additional territory, and had the unrestricted right of amending their charters in this particular by a vote of their citizens alone, the City of Phoenix, for example, might include within its limits the entire county of Maricopa, or even the state of Arizona,

against the wishes and protest of the inhabitants of the district thus included, the only remedy of the latter being an amendment to the Constitution. Such a contingency we are convinced was never contemplated by the framers of the Constitution. It is not necessary, however, that we base our conclusion on this ground alone, for the city charter of Phoenix itself contains a complete answer to the contention of plaintiff. Section 8 of chapter 16 of that charter reads as follows:

"Section 8. The City of Phoenix, by and through its Commission, may by ordinance enlarge and add to and incorporate within the present City of Phoenix, such adjacent land and incorporate into the City of Phoenix such additional area and territory as the said Commission shall deem proper and wise. The procedure for making such enlargement, extension and addition, shall be such as is now, or may hereafter be prescribed by statute, or by ordinance passed and adopted by the said Commission."

It is, of course, a cardinal rule of construction of Constitutions, statutes, charters and similar instruments that they should be so construed, if possible, as to give effect to every provision thereof. The description of the boundaries of the City of Phoenix, found in section 2, chapter 1, of the charter, when construed in connection with section 8, chapter 16, just quoted, in effect means, "The boundaries of the City of Phoenix shall be as herein set forth until enlarged in the manner provided by statute or ordinance." Constitutional provisions of similar character are frequently found, as, for example, in our own Constitution the provisions regarding the number of members of the legislature (art. 4, pt. 2, § 1), the salaries originally provided for the various state officers (art. 5, § 13), and the officers named therein for the counties of the state (art. 12, § 3). In each of these cases, the Constitution itself provides that

they are subject to change by law, and it has never been considered an amendment of the Constitution for the legislature, in conformity with the power conferred upon it, to make such a change.

We hold, therefore, that a change in the boundaries of the City of Phoenix, made in accordance with the provisions of section 8, chapter 16, *supra,* is not an amendment of the charter in the true sense of the term, but is merely the carrying into effect of its provisions. Such being the case, under the stipulation of facts, Sheridan Street was properly within the boundaries of the City of Phoenix at the time the improvement in question was ordered. Finding no error in the record, the judgment of the superior court of Maricopa county is affirmed.

McALISTER and ROSS, JJ., concur.