## SKELLY OIL CO. v. JOHNSON et al.

No. 22635.    Opinion Filed May 31, 1932.

W. P. Z. German, Alvin F. Molony, Robert M. Turpin, and Geo. W Cunningham, for petitioner.

Ben Arnold, for respondents.

SWINDALL, J.   This is an original proceeding to review an award of the State Industrial Commission in favor of Marvin Lois Johnson and against the Skelly Oil Company, the State Industrial Commission being made a party respondent in accordance with the terms and provisions of the Workmen's Compensation Law.   Hereafter the petitioner will be referred to as respondent, and the respondent Marvin Lois Johnson will be referred to as the claimant.

On November the 29th. 1929, more than six months after the date of the alleged injury, the respondent was advised by the Commission of· a claim filed by Marvin Lois Johnson, who claimed he was injured on May 15, 1929.   Claimant had worked for employer under the name of L. M. Johnson.   No other information was contained in this notice.   The claimant alleges that while working for respondent on its J. C. Green oil and gas mining lease, covering lands located near Maud, in Seminole county, Okla., he was hit in the back part of his head by the frame-work of an engine house which was being torn down. and that such injury caused epilepsy.   Claimant never at any time gave written notice of his injury to respondent, and respondent did not have actual notice thereof until some six or seven months after the date of the alleged injury.   Hearings were held before Commissioner F. L. Roblin on February 4th, 21st, and 24th, and March 13th, and April 3, 1930, and before Chairman Thos. H. Doyle on April 4, 1930. After the final hearing and before the order appealed from was entered by the Commission, respondent filed a request for special findings of fact, but in making its order

the Commission refused to incorporate in it any of the findings of fact requested by respondent. On January 9, 1931, the trial Commissioner, F. L. Roblin, entered her order denying the claimant compensation, wherein she made the following findings of fact:

"1. That from May 15, 1929, to May 31, 1929, inclusive, Marvin Lois Johnson was employed by respondent, Skelly Oil Company, and engaged in a hazardous occupation subject to and covered by the provisions of the Workmen's Compensation Law;

"2. That, arising out of and in the course of such employment with respondent herein, claimant sustained an accidental injury on the 26th day of May, 1929; that said accidental injury did not result in any disability;

"3. That prior to May 15, 1929, claimant suffered from a disease known as epilepsy, and is now suffering a disability as a result of said disease; that said epilepsy was not caused, aggravated, or in any way accelerated by said aforementioned accidental injury;

"4. That claimant did not give respondent written notice of said accidental injury as required by section 7292, C. O. S. 1921, nor did the claimant show that said notice for some sufficient reason could not have been given. That claimant failed to overcome the allegation and proof of prejudice to respondent by failure to give written notice."

The findings of the trial Commissioner were not approved by a majority of the Commission. The petitioner contends that the Commission should have approved the findings of the trial Commissioner, who had an opportunity to observe the witnesses upon the witness stand and their manner of testifying and the reasonableness or unreasonableness of the story told by them, or should have granted the petitioner an opportunity to produce the witnesses before the Commission in order that the Commission might have an opportunity to see and hear the witnesses and observe their appearance, manner, and demeanor while testifying, and make the other usual observations that the trier of the facts is granted. Some of the members of this court are inclined to that view, while a majority of the court has announced the rule of law otherwise. Aetna Life Ins. Co. v. Price, 152 Okla. 52, 3 P. (2d) 732. At least that matter was called to the attention of the court in a dissenting opinion of Mr. Justice Andrews, and the court refused to reverse the case upon that ground.

On June 27, 1931, more than 14 months after the date of the last hearing in this case, the Commission entered its award wherein it found that claimant on May 15, 1929, sustained an accidental personal injury arising out of and in the course of his employment with employer by having his head, shoulders, and arm injured; that by reason of said accidental injury claimant has been since the date of said injury temporarily totally disabled from the performance of ordinary manual labor, and was, at the time this order was made, temporarily totally disabled from the performance of ordinary manual labor; and that the average daily wage of claimant at the time of said injury was four dollars per day. Employer was ordered to pay claimant $1,687.75 as compensation, being compensation from the 15th day of May, 1929, to June 27, 1931, computed at the rate of $15.39 per week for a period of 109 weeks and 4 days, and to continue the payment of compensation at the rate of $15.39 until the further order of the Commission. This finding in part is not sustained by any competent evidence. The claimant did not commence work for petitioner until May 16, 1929, and if he was injured as a result of an accidental personal injury, the alleged accident did not occur prior to the tearing down of the engine house on May 27, 1929. So, allowing five day waiting period, the Commission would not under any circumstances be warranted in awarding compensation commencing a day before the claimant claims he was employed and several days prior to the date the injury is claimed to have occurred.

The Commission also found that the partial disability continued over a period of more than 14 months after the last hearing, concerning which period of time there was no evidence. There may have been a change in the condition of claimant after the date of the last hearing and before the date of the award. He might have fully recovered from his injury within 30 days after the hearing and returned to work and not be entitled to compensation thereafter. Where the evidence warrants a finding that there was a temporary partial disability, the Commission should award compensation to the date of the last hearing to continue thereafter for such a period of time as the Commission may find from the evidence it is likely to continue, not exceeding the maximum authorized by the Workmen's Compensation Law, and then, if there is a change in condition for the better or the worse, the Commission may, upon its own motion or upon the application of either party, reduce or increase the award according to the facts.

Upon the issue that the claimant was suffering with epilepsy prior to the date of the alleged injury and that the alleged accidental injury did not cause or aggravate his condition, the petitioner offered the evidence

of several witnesses. There was evidence offered by the claimant that the epilepsy was the result of the injury or was aggravated by the injury. The petitioner requested the State Industrial Commission to make a finding upon this issue, which the Commission refused or failed to do. We think the petitioner was entitled to a finding by the Commission on this issue. If the Commission finds that the epilepsy was not caused by the alleged accidental injury, then the claimant would not be entitled to compensation; if it finds that the epilepsy was caused by the injury and there is a permanent result, there should be no difficulty in settling the case. If the Commission finds that the claimant had epilepsy and it was aggravated by the accidental injury, and the Commission is later called upon to determine the issue of permanent disability or partial permanent disability, they must determine whether or not the partial permanent disability or permanent disability was due to the aggravation of the epilepsy or whether it resulted from the epilepsy that the claimant had, if he did have epilepsy, prior to the injury. Section 7294, C. O. S. 1921, as amended by section 7, chapter 81, Session Laws 1923, among other things, provides that "upon the application of either party the Commission shall order a hearing, and as soon as practicable, after a claim for compensation is submitted under this section, or such hearing closed, shall make or deny an award determining such claim or compensation and file same in the office of the Commission, together with the statement of its conclusions of fact and rulings of law."

It is next contended by the respondent, petitioner herein, that claimant failed to give employer written notice of the injury within 30 days as required by section 7292, C. O. S. 1921, and that the failure of the Commission to make a finding upon this issue constituted material error. It is admitted by the respondents that the claimant did not at any time give a written notice of his injury to his employer in compliance with said section, and that the Commission, although requested to do so, did not make a finding excusing claimant for his failure to give such written notice, either on the ground that for some sufficient reason notice could not have been given or on the ground that the employer had not been prejudiced thereby, or that the employer had actual notice of the injury at the time. It is contended by claimant that the respondent had actual notice of the injury. A careful examination of the record convinces us that the contention of the respondent, petitioner herein, is well taken. This court has

repeatedly held that when it appears that written notice has not been given as required by section 7292, supra, the burden rests upon the claimant to prove by competent evidence that for some sufficient reason notice could not have been given or that the insurance carrier or employer, as the case may be, has not been prejudiced thereby, and that where the claimant's failure to give written notice of an injury is in issue, the Industrial Commission should make a finding excusing or refusing to excuse such failure, and where issue arises whether the employer had actual notice of injury excusing claimant's failure to give written notice, the State Industrial Commission should make a finding of fact in that regard. Pioneer Gas Utilities Co. v. Howard, 154 Okla. 239, 7 P. (2d) 435. See, also, Ford Motor Company v. Hunt, 146 Okla. 185, 293 P. 1038; Velie Mines Corporation v. Rogers, 150 Okla. 185, 1 P. (2d) 353; McMann Oil & Gas Co. v. Garrett, 155 Okla. 76, 7 P. (2d) 686; Oklahoma Railway Company v. Banks, 155 Okla. 152, 8 P. (2d) 17; Turner v. Earl W. Baker & Co., 153 Okla. 28, 4 P. (2d) 739; Olsen Drilling Company v. Tryon, 150 Okla. 18, 300 P. 663; W. Edmiston Drilling Company v. Russell, 151 Okla. 108, 1 P. (2d) 374; Hales v. Oklahoma Producing & Refining Company of America, 109 Okla. 286, 232 P. 42; Cameron Coal Company v. Collopy, 102 Okla. 207, 228 P. 1100; Oklahoma Natural Gas Co. v. Baker, 148 Okla. 227, 298 P. 875.

There is no contention that the claimant could not have given the written notice, and there is no competent evidence that the respondent, petitioner herein, had actual notice. The claimant claimed that L. M. Bice had personal knowledge of the injury. However, there is nothing in the record to show that he was a foreman, superintendent, or employee required to give notice to the employer of an accidental injury. Section 7292, C. O. S. 1921, provides, among other things, that notice of an injury for which compensation is payable under the compensation act shall be given to the Commission and to the employer within 30 days after injury. Such notice may be given by any person claiming to be entitled to compensation or by someone in his behalf. The notice shall be in writing and contain the name and address of the employee, and state in ordinary language the time, place, nature, and cause of the injury, and shall be filed by him or by a person in his behalf. If the employer be a corporation, then such notice may be given to any agent or officer thereof upon whom legal process may be served or any agent in charge of the business in the place where the injury occurred. We have held that actual notice to

any agent or officer of the corporation upon whom legal process may be served or any agent in charge of the business at the place where the injury occurred, or such actual notice to an individual or to a member of a partnership or any agent in charge of the business of such individual or partnership at the place where the injury occurred, of the facts which the notice is required to contain, relieved the employee of the duty of serving the written notice, for the reason that the employer had all the knowledge that the written notice would impart, but we have never held, and we do not feel that we would be justified in holding, under a liberal construction of the Workmen's Compensation Law, that actual notice of facts which do not impart notice to the employer or its agent of the facts that the written notice must convey, or that actual notice of facts to an employee of an employer corporation who does not sustain such relation to the corporation as agent or officer thereof upon whom legal process may be served or agent in charge of the business at the place where the injury occurred, or a superintendent or foreman in the place where the injury occurred and required, in the latter instance, under the rules of the company to report accidental injuries to the employer, are sufficient to relieve the employee and claimant of giving written notice under section 7292, supra. This is in harmony with our former holding, and in holding that actual notice to a superintendent or foreman who is required under rules of the company to report accidental injuries to the employer relieves the claimant of the duty of giving written notice, goes one step further than most of the courts have consented to go. It is not shown by the record in this case that the petitioner had such notice, and the Industrial Commission has not excused the failure to give such notice upon the ground that the employer had not been prejudiced thereby. The pleadings and the evidence made this a material issue for the Commission to pass upon. The Commission is the trier of the facts, and if there is any competent evidence to sustain their findings, this court is bound by the findings as made. However, it must make findings of fact before this court is authorized to review the same and determine whether or not there is any competent evidence to sustain its findings. In Prairie Oil & Gas Company v. King, 109 Okla. 213, 235 P. 522, we held:

"It is also provided that it is the award or the decision that is to be reviewed. The validity of the award must depend upon the correctness of the rulings of law made by the Commission. The correctness of such rulings of law, in turn, depends upon the conclusions of fact of the Commission. It thus appears that this court cannot review an award in a case where there are no conclusions of fact or rulings of law made by the Commission, or, as in the instant case, where such conclusions and rulings are too indefinite and uncertain for judicial interpretation. In such case, this court will remand the cause that the Commission may perform its functions and duty in this behalf. In a long line of decisions, this court has held that the findings of the Commission on questions of fact will not be reviewed by this court where there is a quantum of evidence to support same. See Ohio Drilling Co. v. State Industrial Commission, 86 Okla. 139, 207 P. 314, 25 A. L. R. 367, and numerous decisions both prior and subsequent. For this reason, it is essential that the Commission make its conclusions of fact in order that this court may consider whether the rulings of law by the Commission are supported by the facts, and whether the award made comports with the facts so found and the rulings so made."

This case was cited and approved in Clark v. Highway Commission of Oklahoma, 146 Okla. 38, 293 P. 260. This same question was before the appellate court of Indiana in Standard Cabinet Co. v. Landgrave, 73 Ind App. 625, 128 N. E. 358, wherein the court said:

"Appellee finally contends that the evidence shows that appellant had sufficient knowledge of appellee's alleged injury, and that a reasonable excuse existed for the latter's failure to give the former written notice thereof. If it be admitted that this is true, such fact would not aid appellee, in the absence of a finding to that effect, as the award must be sustained, if at all, by the facts found."

To the same effect is the holding in Bloomfield v. November, 219 N. Y. 374, 114 N. E. 805. The syllabus of this case is as follows:

"The Industrial Commission's ruling that failure to give written notice of injury 'is hereby excused,' without finding of facts, was not sufficient compliance with Workmen's Compensation Act (Consol. Laws, c. 67), sec. 18, barring action in such cases unless Commission excuse failure to give written notice on ground that such notice could not have been given or that the employer had not been prejudiced, and their award will be reversed."

And in the opinion the court made the following statement:

"The Legislature has enumerated reasonable conditions under which failure to serve the notice may be excused, and we think that the attention of the Commission should be fastened upon the question whether upon the proofs in a given case the circumstances do exist which are sufficient to justify such failure, and that if they do exist, that fact

should be properly stated as one of the facts which constitute the basis of the award. We do not think that it is good practice that the service of such notice should be excused without any finding of the existence of conditions which justify such action on the part of the Commission or statement even of the theory on which the excuse has been granted."

The Commission having failed to pass upon this issue, the award must be vacated and the cause remanded to the Commission to determine the same.

The claimant contends that under section 7334, C. O. S. 1921, he is excused from giving written notice because he is a "minor dependent." We fail to see where section 7334, supra, has any bearing upon the case under consideration. Section 116 of the New York Compensation Law is the same as section 7334 of our Workmen's Compensation Law; in fact, this section of our law was borrowed from New York. It is as follows:

"No limitation of time provided in this act shall run as against any person who is mentally incompetent or a minor dependent so long as he has no committee, guardian or next friend."

In the case of Beagle v. Groff, 191 N. Y. S. 307, in construing that statute, the New York court said:

"The word 'dependent,' as used in the Compensation Law, has a definite and unequivocal meaning. He is a person dependent for support upon a deceased relative, on account of whose death in the course of his employment a recovery of death benefits is sought to be made from the employer. Workmen's Compensation Law, sec. 16. A 'minor dependent' is a brother, sister, or grandchild, under the age of 18 years, of a deceased person thus killed, upon whose support he or she was dependent. Workmen's Compensation Law, sec. 16, subd. 4. This claimant is not seeking recovery of death benefits for the death of another upon whom he was dependent, but claims compensation for injuries inflicted upon himself. He is, therefore, in no sense a claimant who has the character of a 'minor dependent,' and, consequently, is not within the exception made by section 116.

"It is said that this is a narrow construction of the section. On the contrary, it is a correct reading of legislative words which themselves, without ambiguity, express a narrow legislative intent. Any other reading completely eliminates the word 'dependent' from the section, and, under the transparent garb of interpretation in reality constitutes judicial legislation."

Bouvier's Law Dictionary defines a "dependent" as:

"One who derives support from another."

And in Schneider on Workmen's Compensation Law, vol. 2 (2d Ed.), p. 1196, the following definition of "dependent" appears:

"A 'dependent,' in law, is one who is sustained by another or relies for support upon the aid of another; who looks to another for support and relies upon another for reasonable necessaries consistent with the dependent's position in life. * * *"

This court in United States Fidelity & Guaranty Co. v. Cruce, 129 Okla. 60, 263 P. 462, 56 A. L. R. 879, held that:

"* * * An 18 year old employee may maintain in his own name a proceeding against his employer for compensation for an accidental injury arising out of and in the course of his employment."

The New York Workmen's Compensation Act provides for compensation for accidental injuries resulting in death. In adopting certain sections of the New York law the Legislature of this state eliminated the provision allowing compensation for injuries resulting in death for the reason they felt that such provision might be in conflict with section 7 of article 23 of the Constitution of Oklahoma, which provides that:

"The right of action to recover damages for injuries resulting in death shall never be abrogated, and the amount recoverable shall not be subject to any statutory limitation."

It is evident that in adopting what is our section 7334 the words "minor dependent" were permitted to remain in the section by inadvertence and really have no force when construed in connection with the other sections of our act. We, therefore, hold that section 7334, supra, providing that no limitation of time provided in this act shall run as against any person who is mentally incompetent or a minor dependent, so long as he has no committee, guardian or next friend, does not apply to a "minor employee" who is mentally competent, claiming compensation for himself. Under the Workmen's Compensation Law of this state a minor employee who is mentally competent may maintain in his own name a proceeding against his employer for compensation for an accidental injury arising out of and in the course of his employment.

It is further contended by the petitioner that the Industrial Commission received as evidence the opinion of expert witnesses without requiring the claimant to submit to the witness the facts offered in evidence upon which the expert based his opinion. This court held in the case of Fitzsimmons v. State Industrial Commission, 120 Okla. 31, 250 P. 111-112, that:

"The opinion of skilled physicians is com-

petent to prove the cause, extent, and duration of the injury, and is frequently the only evidence that the nature of the case will permit; but the opinion of an expert, to be competent, must be based upon facts admitted or established."

To the same effect is Boggs v. United States Fidelity & Guaranty Co., 139 Okla. 155, 281 P. 226-228. This seems to be the well-settled rule of law in this jurisdiction, and in all other jurisdictions as far as our attention has been called to the same, and we adhere to the rule announced in these cases.

There are many other assignments of error briefed and presented by the petitioner. They seem to be well settled by the former decisions of this court. We assume that the Industrial Commission will follow the rule of law as declared by this court upon the other questions briefed in the event of a retrial of this action, and we do not deem it necessary to further discuss said assignments, as they present no new questions.

For the reasons herein stated, the award is vacated, and this cause is remanded to the State Industrial Commission to make findings of fact upon the controverted issues consistent with the evidence that may be offered by the parties and in accordance with the views herein expressed.

RILEY, HEFNER, CULLISON, ANDREWS, and McNEILL, JJ., concur. KORNEGAY, J., dissents. LESTER, C. J., and CLARK, V. C. J., absent.

---

KORNEGAY, J. (dissenting). I cannot agree with the majority of the court in their decision to set aside the award in this case. It is but another one of the judicial enactments in the "latter days" that are gradually undermining the authority conferred by statute on the Industrial Commission.

The size of the award in this case necessarily will be large, as any one would know that a boy the age of this one, afflicted with epilepsy as the result of an engine house falling on him and breaking his skull, would likely be on the hands of the oil company, which is its own insurance carrier, for a very long time.

The boy has epilepsy, according to all the testimony. There was some conflict as to when it developed. The testimony, however, showed that it never had developed from the standpoint of creating a disability until after he was hurt by the falling of the engine house on him. The record shows that he was born May 11, 1912, and that the accident happened to him May 27, 1929, and that written notice was given to the Commission November 22, 1929.

I cannot agree that the decisions cited for the position here taken justify it, notwithstanding the "latter day" tendency. The case that is cited for the proposition that he had none of the rights that accrued from the disability of minority under the express language of the act, is the case of U. S. F. & G. Co. v. Cruce, 129 Okla. 60, 263 P. 462, the opinion being filed January 17, 1928. That opinion was to affirm the action of the Commission. It is now used for the purpose of reversing the action of the Commission, or rather some statements therein contained are so used. The opinion is rather long, and it holds that it was not necessary to go to the expense of appointing a guardian for an 18 year old boy, acting under the supervision of the Industrial Commission, based on the proposition that the Industrial Commission was an administrative board, and that the technicalities of court procedure were what the Legislature was trying to get away from. It occurs to me, however, that all the technicalities of court procedure are now being riveted upon the administrative work of the Industrial Commission by decisions of this kind. At page 62, of 129 Okla., in discussing the matter, the court, referring to the laborer's and employer's troubles, says:

"Both had suffered under the old system —the employers by reason of heavy judgments which went largely to attorneys' fees, and the workmen through the loss of time, the waste, costs and uncertainties of litigation. So that the one was willing to forego a jury trial in consideration of a much smaller sum which was certain to be paid. * * *

"Assaults from every angle have been made upon our Compensation Laws upon the claim that they were unconstitutional; that they violated our fundamental law with respect to jury trial: that they limited the recovery in personal injury cases; that they interfered with the freedom of contract; that they took money and property without due process of law; that they imposed a penalty upon a person who, or an industry which, had been guilty of no negligence or default, and compelled the payment of compensation to one injured perhaps through his own negligence and without a corresponding default in the party called upon to pay. While these assaults met with measurable success at the outset, they have all fallen harmless as against the stability and legality of the modern Compensation Law. A further complaint has been made against these laws because they have transgressed or ignored the old procedure, the technical pleadings, the strict rule of evidence, the burden of proof, and many of the ancient standbys that were the product of and peculiar to our laws, which were the heritage of the long ago.

"These enactments are now almost as

much a matter of public necessity in our industrial life as are our industries themselves. One authority has said:

" 'The purpose of all Workmen's Compensation Acts and industrial insurance laws, however, is to abolish the sporting rules of the common law; and even those acts which are optional contain provisions calculated to effect this result. The discredited doctrines of assumption of risk and fellow service, and even the defense of contributory negligence, are declared to be abolished.' "

After making quotations showing that they were not judicial officers in some states, the court says:

"At page 547 of Standard Encyclopedia of Procedure, vol. 26:

" 'The procedure may be prescribed by the act itself, or the Commission may be authorized to provide it.' (Citing Massachusetts Bonding & Ins. Co. v. Industrial Acci. Comm., 176 Cal. 488, 168 P. 1050.) This case holds:

" ' "The Workmen's Compensation Act empowers the Commission to adopt reasonable and proper rules of practice in proceedings before it. Any notice or method of procedure which does not transgress the constitutional mandate regarding due process of law, or the provisions of the act itself, is within the power of the Commission. It is not obligated to follow the methods in use in the ordinary courts of the land." '

"In Hagenback & Great Wallace Shows Co. v. Leppert, 66 Ind. App. 261, 117 N. E. 531, in the body of the opinion, it is said:

" 'We deem it advisable to state that we have not considered the assignment of error that "the Commission (board) erred in overruling appellant's amended plea in abatement," for the following reason: The rules of procedure prescribed in the Civil Code are not available in matters before the Industrial Board.'

"In the case of Carroll v. Knickerbocker Ice Co., 169 App. Div. 450, 155 N. Y. S. 1, discussing the statute which provided that the Commission should not be bound by the technical formal rules of procedure, etc., the court said:

" 'As to proceedings before the Commission, these two sections wholly abrogate the substantive law of evidence—abrogate the common law, the statute law, the rules of procedure formulated by the courts, and all the technicalities respected by the legal profession. The Commission is authorized by this section, it seems, to make its investigation in any manner that it chooses, wholly unfettered by any law previously invented by man. This is the spirit of the statute. The Commission is to be bound neither by custom nor by precedent. The trials before the Commission are to be summary, speedy and informal. The very instant that the old rules of evidence are invoked the informal character of the hearing disappears, and the rigid, formal rules of procedure and all the technicalities incident to the practice of the law will grow up around the Commission, hampering and delaying it, working inconvenience and hardship upon the claimants and defeating the intent of the law.' "

Continuing, with reference to our own law, the court says at page 63:

"Now, examining the Oklahoma Workmen's Compensation Law, * * * it appears: First, that our Industrial Commission is composed of three commissioners appointed by the Governor, each of whom is under bond in the sum of $10,000, conditioned for his faithful performance of the duties of the office, subject to removal by the Governor for inefficiency, neglect of duty, or misconduct in office after an open hearing. It further appears that the Commission may appoint inspectors to take evidence and conduct investigations in the same manner and with the same power as the Commission; that under section 7318, the Commission is given power to adopt all necessary rules not inconsistent with the act to take care of the the administration of the powers given the Commission, including the method and time of investigations, conduct of hearings, and carrying into effect the provisions of the act creating the Commission. The Commission, under the power given, has promulgated comprehensive rules as to procedure, one of which appears to be No. 28, the latter part of which reads:

" 'Such hearings shall be conducted in such manner as to ascertain the substantial rights of the parties, and the Commission, a commissioner, inspector or arbitration committee therein, shall not be bound by common-law or statutory rules of evidence or by technical or formal rules of procedure.'

"Rule No. 32 is:

" 'The rules of the State Industrial Commission are subject to amendment at any time; and the Commission will adopt additional rules whenever, in its judgment, the same are advisable.'

"From this it will be observed that the Commission has acted, and is now acting, under the power set out in the legislative act of creation without respect to our Code Procedure."

At page 64, the court further says:

"It seems abundantly clear from the provisions of this act that the Legislature intended that the scheme should be complete and comprehensive. It marked out the path and blazed the way in a new field. The act completely divorced the disposition of cases coming under the jurisdiction of the Commission from the law courts, from the practice and from the procedure, as well as from the delays and the heart-breaking uncertainties and expense. It set up a new

tribunal, clothed with new powers, to do a new job and in a new way; and, so far as we know, the various Commissions in the several states have proceeded upon the theory that their powers, taken from the legislative acts of creation, were complete and ample for the purpose of carrying out the object for which they were created."

The court refers to the expense of guardian appointments, and gives a list of the appeals in the year 1925, 46 appeals to the Supreme Court with 7 reversals; and in 1926, 37 cases were appealed and 3 were reversed. Again, at page 65, the court says:

"In the case at bar the claimant was 18 years old, and had the power under our law to contract and to sell his services to his employer. It would be passing strange if he could not compel the payment of compensation for injury when our courts hold that such sum so provided is not damages for his disability, but in the nature of wages. Under our practice before the Industrial Commission, where the claimant is not represented by counsel, the development of claimant's case is taken over by the Commission. This practice is general and understood by the bench and bar and is generally regarded as proper. What peculiar benefit could a guardian or next friend be in such circumstance? These untutored claimants are generally, we think, regarded as the objects of special care by the Commissions, and their interests are carefully guarded. This procedure, so far as we know, has never been protested, even by those who are called upon to respond in compensation, for the economic administration of the act has, of late years, met approval and co-operation of individual and industry alike.

"Diligent counsel for respondent has been able to find no case supporting his contention that this proceeding should be brought by guardian or next friend of claimant, and, with a very diligent search, we have been unable to find any such authority. Among many other authorities we have exhausted the latest 'Workmen's Compensation,' by Schneider, 1922, Honnold's excellent work on the same subject, and Negligence and Compensation Cases, and we find no cases sustaining the contention. The very fact that none has been found or can be found is proof that the authorities generally assume that the very purpose of the act is to make it unnecessary to comply with our Statute of Civil Procedure, and to permit these administrative boards and Commissions to summarily and promptly handle, without delay and without unnecessary cost, these inevitable incidents of our rapidly growing industries. In the absence of some strong, sound reason indicating the vital necessity of adherence to our Code of Civil Procedure, we feel we should indulge the presumption that those administering, and

those affected by the Compensation Act have heretofore properly construed their rights and duties in the premises under the act, and for that reason, and others indicated, we hold that it was not error for the Commission to overrule the motion by respondents to dismiss this cause, and it is therefore adjudged that the action of the Commission should be, and the same is in all respects affirmed."

I cannot believe that that case would be an authority for the position here assumed on procedure as well as on substantial rights.

A case not cited, however, in the majority opinion seems to indicate fully as strongly as the case cited that we are departing from the line of decisions heretofore followed. The case of Scruggs Bros. & Bill Garage v. State Industrial Commission, 94 Okla. 187, 221 P. 470, which appears to have been unanimously approved by the Supreme Court at the time of its rendition, namely September 25, 1923, seems to be explicit and to follow the general idea of getting rid of court procedure and of its uncertainties in labor cases. At page 190 of the Report, the court says, referring to the Workmen's Compensation Law:

"A board of arbitration was created to sit as triers of the facts as between the employer and employee and to adjust the loss of time and earning capacity between the two. If the matter of human suffering is in any way taken into the question, it is upon the basis of the employee enduring the pain and the employer and his insurance carrier paying the expenses of the treatment.

"It has been repeatedly held by this court that no finding of fact made by the Commission upon competent testimony is to be disturbed by the appellate tribunal. It is in the very terms of the act itself that the board of Commissioners are the sole triers of the facts, and there is no power in the appellate court to disturb the findings of fact made by the Commission upon competent testimony. There is another thing in connection with the operation of the Industrial Commission that must be borne in mind, and that is, that the board of Commissioners constitute a board of arbitration rather than a court. Their office is appointive and not elective, and no legal learning is required to hold the position. The Chief Executive appoints the Commissioners, and any layman is qualified to sit upon the Commission if he holds the Governor's commission giving him authority. The Legislature intended the Commission as a board of arbitration between the employer and his insurance carrier on the one side, and the injured employee on the other. This must be so, since it required no legal learning on the part of the members of the

board, and the means of testing the validity of their awards is by original petition in the Supreme Court and not by appeal up'on the record made before the Commission, as provided for appeals from trial courts. Hence, of necessity, the proceedings before the Industrial Commission must be informal in many respects as compared to the procedure in a court presided over by a judge required to be learned 'in the law. And, in addition to the foregoing facts, this court is committed to a liberal construction of the Workmen's Compensation Law for the purp'ose of carrying out and giving effect to its provisions.

"With the idea in mind that the Commission is not held to strict legal formality, and that the findings and awards are not to be disturbed 'if there is any testimony reasonably tending to support them, and that the law is to be construed liberally, we shall now examine what the Commission had before it upon which to make 'its finding and award in behalf of this injured employee."

However, the act itself, by which we are bound, seems to be explicit. The general law on the subject of reversal of even the law courts provides that it shall not be done except in the interest of justice, and in the conference, just before this opinion was adopted, a law case, Maney Bros. v. Blackburn, 158 Okla. 298, 13 P. (2d) 177, No. 20172, was read, in which the benevolent acts of the Legislature in curbing courts' reversals was referred to and quoted. Section 2822, C. O. S. 1921, the same as section 6005, R. L. 1910, it seems to me, is a general limitation on court power. That section is as follows:

"2822. Harmless Error. No judgment shall be set aside or new trial granted by any appellate court of this state 'in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, · after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

It seems to me that the court in undertaking to reverse the Industrial Commission in this case is confronted with that section. This is under the head of Criminal Procedure, which ordinarily deals with human liberty, while this case deals with human living. The provision under Civil Procedure is contained in section 5031, R. L. 1910, or section 570, C. O. S. 1921, as follows:

"570. Immaterial Exception. No exception shall be regarded, unless 'it is material and prejudicial to the substantial rights of the party excepting."

And section 4791, R. L. 1910, section 319, C. O. S. 1921, as follows:

"319. Immaterial Errors to Be Disregarded. The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect."

It would seem, therefore, that the Legislature has limited generally the power of this court, aside from the limitation contained in the Workmen's Compensation Law itself. By reference to that 'it will be found that the deductions from the evidence on questions of fact of the Industrial Commission are not reviewable here at all, and a long line of cases have held that 'if there was any substantial evidence to sustain an award, we were bound by it.

As applied to this case, the evidence as to the epilep'sy was practically undisputed. As to its origin, the evidence was somewhat in conflict, the prep'onderance of it, however, being towards the proposition that the break in the occipital bone, something like an inch from the opening that the spinal marrow and its connections come through, was the cause of the epilep'sy. We all know that 'it was in a region where it would likely develop into trouble of that kind with any complication.

In order to get rid of the connection between the injury and liability for compensation, the oil company resorted to two methods. One was to avoid it because no written notice was served on it within 30 days. The other was through its extensive intelligence department to establish that the origin was not this injury, but an injury that had occurred some years before, arising from falling from a horse, though on this feature, as I view it, they broke down, as the witnesses that they used were in large measure contradicted by the surroundings and circumstances, as well as by p'ositive testimony of witnesses who knew of the condition of the boy before he went to work for the oil company. The Commission believed those people. It had a right to believe them, and by the decision of the Commission on that belief we are bound, notwithstanding that it is a heavy award that is to be visited upon the respondent in this case. There was a slight effort, though abortive, made to show that independent of injury there was epilepsy.

If there is to be a remedy for excessive awards made by the Commission, it will have to be provided by the Legislature in-

stead of by court decision, in my judgment, as by the terms of the law the Commission in making an award must preserve the evidence largely for its own guidance in the exercise of its continuing jurisdiction. We cannot interfere with their findings of fact if there is any legal evidence to support. The Legislature saw fit to pass the law so that at any time, except after a settlement on a joint petition, the Industrial Commission could open the award, change the unpaid portion, stop compensation, and render such additional award as in its opinion might be justified. See section 13391, Harlow's Okla. Stat. 1931. Under section 13384, the Commission was specially empowered to adopt rules as to character of notices, nature and extent of the proofs, and evidence, and the time within which adjudication and award shall be made, and the conduct of hearings, investigations, and inquiries, though a record of the evidence was required to be kept with the objections to the evidence, and the objections are required to be considered and passed on by the Commission and preserved in the record. In order to make it an award of the Commission, it would have to be approved and confirmed by the Commission, and section 13361, Harlow's Okla. Stat., 1931, requires us on appeal to presume in the absence of substantial evidence to the contrary:

"1. That the claim comes within the provisions of this act.

"2. That sufficient notice thereof was given.

"3. That the injury was not occasioned by the willful intention of the injured employee to bring about the injury of himself or of another.

"4. That the injury did not result solely from the intoxication of the injured employee while on duty.

"5. That the injury did not result directly from the willful failure of the injured employee to use a guard or protection against accident furnished for his use pursuant to any statute or by order of the Labor Commissioner."

As applied to the notice of injury in this particular case, it must be conceded that under the former rulings of the court that a notice in an ordinary case is sufficient if it is brought to the person in charge of the work at the place, or, in the language of statute, "or any agent in charge of the business in the place where the injury occurred." It has been repeatedly held that the giving of this notice is not jurisdictional, and that when the Commission makes the award it includes every finding necessary on the evidence before it by general finding.

In the particular case, the party that was dealt with was a minor 17 years old, and the Workmen's Compensation Law undertakes to provide an excuse for minors, but the decision of this court takes that out of the act and makes it nugatory and makes no place for the section to operate, following a New York decision, as it is claimed. However, it is a cardinal rule that whatever appears in the act must remain there and an effect be given if possible. The line of reasoning by which the majority undertake to render nugatory the provision as to minority could scarcely be classed as reasoning in a circle, but rather going in a hole and staying there. It says that the law does not allow compensation for death loss, and yet says that that is what this means, that the minor referred to in section 13399, Harlow's Stat. 1931, as follows:

"13399. Limitation of Time—Exception as to Persons Under Disability.

"No limitation of time provided in this act shall run as against any person who is mentally incompetent or a minor dependent so long as he has no committee, guardian or next friend."

—is a minor dependent on a dead worker.

Very laboriously, by definition of "dependent," has the court gotten rid of the section. I think it means what it says, and it was but an effort of the Legislature to provide that a person under 21 years of age in the case of a male, or under 18 years of age in the case of a female, was allowed the usual protection to persons laboring under legal disability. I have an idea that if the majority had been as diligent in looking up Oklahoma decisions for the purpose of sustaining the action of the Commission, and of maintaining the award in favor of this minor, they would have discovered the decision of Roxana Petroleum Co. v. Cope, 132 Okla. 152, 269 P. 1084, where it was held that the parent was entitled, notwithstanding the Workmen's Compensation Law, to recover the minor's earnings, as well as for personal injuries. To hold that the minor is barred by laches, renders nugatory the provision in the particular law, as well as the general statutes following the common law.

That opinion was filed on the 26th of June, 1928, and rehearing denied on September 11, 1928. It reviews the field and refers to the case of U. S. F. & G. Co. v. Cruce. cited above, and holds that the parental right of recovery was not affected by the Workmen's Compensation Law. As applied to the evidence in the case, it appears that the intelligence department of the Skelly Oil Company raked, as with a

fine tooth comb, everywhere for witnesses to establish the fact that the epilepsy in this case was traumatic in origin, and had experts also to claim that it might be idiopathic.

The testimony of the immediate relatives of the claimant, as to his condition before the accident with reference to the epileptic spells, was taken February 20, 1930, and he was born on the 11th of May, 1912, according to the testimony. The attendants who took care of him testified as to his condition, and F. F. Fields, on behalf of the respondent, testified for the oil company, and stated the accident occurred on the 27th of May, 1929. Describing at the instance of the counsel what happened, he said:

"A. Well we pushed it. The doors were off and the frames were up there, and there were still two at one end, and Bice knocked two of his ends off. He got over and pushed his ends off, and it was not a whole engine house. Q. Did the claimant fall at that time? A. Yes, he fell off at that time."

He stated the two by four fell seven feet, and that there was nobody there besides Bice, himself, and Johnson, and that Bice and Johnson were up prying off rafters. Being asked where the boy went to, he said:

"He walked up and sat down on the walk, and we asked him if he was hurt, and he said yes, he felt hurt and sick, and we asked him if he wanted to work on, and he sat there five or ten minutes, and he got up and went on, and we never heard any more complaints."

Fred Hunt testified that he was district foreman in charge of the lease, and Mercer was in charge of it under him, and he had an assistant, Glen Cardin, and about the first of January this year he received notice of the accident in a letter not written to him, but to the district superintendent, who took Mr. Mercer's place. On cross-examination he states:

"Q. Who was your foreman out there? A. Mr. Cardin is the foreman and Mr. Bice is the gang pusher. Q. He was in charge of this boy on this job? A. Yes."

On redirect examination he stated that Bice was not in charge of the lease, saying that, "He just pushed the gang. He was sent for that."

C. L. Swimm, the manager of the claims and insurance department, testified he was not notified. Objection being raised, the attorney for the employer stated that they were not alleging that he was the one to be notified, and the court admitted the evidence for what it was worth, saying:

"The claimant can be excused for his failure to notify any person."

He stated that he received from the Commission on November 29th, form 2.

This hearing was continued to February 21, 1930. At that hearing Dr. M. S. Gregory, whose qualifications were admitted, testified, and told of a report from Dr. E. C. Wilson under date of December 26, 1929, of a fractured skull. The fracture was in "the occipital bone, from which the spinal cord descends." He pronounced it a case of traumatic epilepsy. He stated that a small per cent. of cases improved or got well, and that the only treatment was rest and quiet. He was cross-examined as to the various forms of epilepsy. The suggestion was made by the attorney that perhaps an epileptic fall had caused the fracture instead of the fracture causing the epilepsy. He did not think the party was able to work. Evidently this physician was well versed in what he was testifying about.

The claimant described the accident. He says:

"I was working under L. M. Bice, and Frank Fields was working with us as a truck driver. He did not have anything to do that day, and was helping us on the engine house, and we had it all torn down except one end, and I thought it was going to fall on the inside, and I started to jump out, and it hit me, and knocked me down about four feet on the ground, and they came down there and picked me up. It did not knock me unconscious very long; it just dazed me a little, and I went up and sat down on a keg, and I told Bice I was ———— and he said, 'No you are not hurt' and that evening I went home and I went home and did not come back for three or four days, and ever since then I have had a serious headache, and last July I was working for T. B. Slick, and rooming with a lady named Clark, at Asher, and I went to church one night, and I had been feeling dizzy all day and when I got to the steps I fell, and I have been having these spells ever since."

He stated the end of the building fell on him when it fell. A knot was on his head. Describing his symptoms, he says:

"At the time the engine house fell on me I had quite a dizzy or fainting spell, and when I would get to feeling that way I would sit down, and then in fifteen minutes I would get all right, and would get up and work."

He was there detailing his condition after the accident. He described his condition of turning sick and blind when he got real hot, and after he had come to, he had a headache. That he worked for Slick in August five days and got so sick he could

not work and had to quit the job. He had always been well before the accident.

On cross-examination he stated he was not positive as to the date of the month when the accident occurred. He stated to the court that the first spell was the last of June. Dr. Gregory detailed his conduct in falling to sleep while waiting for the doctor to get to him.

Dr. E. C. Wilson, an admitted X-ray expert, testified to X-raying the fracture, and that if trauma produced the fracture, it would be sufficient to produce epilepsy. That a week after the accident there might have been something done and there might not. He described it as a piece of bone three-fourths of an inch square. On cross-examination he stated that traumatic epilepsy was caused by a scar pinching on the brain substance, scar tissue following an injury. He was thoroughly cross-examined. He described the fracture as follows:

"It is a fracture about one inch back of the foremenangum. It is about three-quarters of an inch square and it is a lineal fracture. One fracture is about parallel with the lambdoid suture, and two fractures are at right angle, and one line seems to be extended from the lambdoid suture."

He was questioned as follows:

"Q. Doctor, what part of the back of the head was that on? A. Just as—just about as close up to the neck, as you can get it. Q. It is a basal fracture close up to the neck? A. Yes, at the base of the skull."

It would be useless to give further extracts as to the testimony of experts as to the probable origin of the disability that the claimant undoubtedly has. In my judgment, however, the testimony of the experts, pointing to the injury at the base of the brain as detailed here, would far outweigh the testimony of those that were trying to make this congenital or idiopathic epilepsy. However, when the lay testimony is taken into the account and the opportunity for observation of the various witnesses is considered, the lay testimony far outweighs, on behalf of the claimant, to the effect that he was prior to the injury a normal 17 year old boy, trying to do something to make a living.

As to the notice of injury, it is hard to see how any one could figure on this testimony that the man in charge of wrecking the building did not know of the injury, though neither the claimant nor the man in charge recognized the serious consequences that later flowed from it. Like the average boy and the mother of the average boy, they thought a little knot on the head that under the evidence in this case, apparently was caused by a piece of timber hitting him at that place on the head and knocking the boy into the mud, as detailed by him and uncontradicted by others, would soon get well, and until the symptoms that probably arose from scar tissue at the place of the injury with its attendant consequence, nobody thought that the injury was worth reporting to the head department, though at the same time the man in charge of the boy, and under whom he was working at the time, knew all about the accident, though not of the disability eventually resulting.

Some stress is laid upon the finding of the trial commissioner to the effect that the injury in this case resulted from an old epilepsy, in the face of the undisputed facts of a building large enough to accommodate an engine on a lease was being wrecked, and that the boy fell several feet with some of the timbers on him. However, if one will examine the rulings on the admission of testimony of the trial commissioner, as preserved in this record, he is bound to believe that the trial commissioner scarcely appreciated the surroundings. The full Commission, in a body, directed by law to make the award, did not approve this finding of the trial commissioner, and all the evidence is here. Under that evidence the full Commission, as I view it, could not have approved the recommendation.

Reference is made to the length of time that accrued from the time of the taking of the last testimony to the date of the award. If one will examine this testimony and see how far-reaching and to what minute details the intelligence department of the respondent, Skelly Oil Company, carried its investigation, with no pay whatever to the one that was totally disabled, he is not at all surprised that the award was delayed as long as it was after the hearing.

The Commission in making its award allowed from the 15th of May, 1929, to June 27, 1931, for total disability, to continue until the further order of the Commission. This court announces that the claimant did not commence work until May 16, 1929, and that, according to the books, the engine house was torn down on May 27, 1929. However, that is a very minute matter, as compared with 500 weeks, the period of total disability, that from the appearance of this evidence the oil company is liable for.

Under the continuing jurisdiction of the Commission, evidently created for the purpose of correcting such minor details as these, and to prevent reversals by this court under the guise of mistakes, the Commission at all times had the right to make this correction without a reversal and setting

aside of the entire award in this court. None knew that better than the representative of the oil company. Instead of suggesting to the Commission that they had made a mistake in the date and asking for a modification of the award with the view of carrying it out, the oil company come in and take an appeal to this court, giving supersedeas bond, and prevent any payment at all being required by the Commission.

Some complaint is made of the delay in making the award, and of the action of the Commission in finding that the party's disability was continuing at the time of the award, there being no evidence as to the condition from the hearing until the time of the award. Such will happen in any award. However, if the miraculous had happened with the intelligence department of the oil company, they certainly were on inquiry as to whether the boy had recovered from the time of the hearing up to the time of the award, and instead of appealing and tying up everything, honest duty required that they make some showing if the boy had recovered, and, in the absence of their so doing, the Commission followed the usual rule.

We might surmise with reference to most of the elements offered in any case, and indulge in the oft-repeated story, "It might have been." So far is this idea carried that the court says:

"There may have been a change in the condition of claimant after the date of the last hearing and before the date of the award. He might have fully recovered from his injury within 30 days after the hearing and returned to work and not be entitled to compensation thereafter."

We can scarcely speculate in that manner upon the probability of a recovery in an epilepsy case, if we had no evidence at all from modern experts, though the evidence is full as to the progressive and lasting condition of the epilepsy that had developed in this case.

In the Old Testament we find that in a very early day there was some little knowledge as to the consequences that flowed from an injury to the head or the spinal cord. This, however, has been enlarged upon by modern research, and the court is instructed by what are classed as experts in matters of this kind, though the common man's observation does not always coincide with the testimony of experts, and experience while a member of this court in reviewing industrial cases has convinced me that the beauty of the expert's testimony is loyalty based on variety.

By reference to the Lawyer's Bible, in the last chapter of Ecclesiastes the fears that come upon men at times are spoken of, and the grasshoppers being a burden, and that "desire shall fail," because of man's going to his long home, and the mourners going about the street, and the 6th verse of that chapter refers, evidently, to one of the causes of man's going to his long home and the mourners going about the street, as follows:

"6. Or ever the silver cord be loosed, or the golden bowl be broken, or the pitcher be broken at the fountain, or the wheel broken at the cistern.

"7. Then shall the dust return to the earth as it was: and the spirit shall return unto God who gave it."

I rather think that in the olden time they knew something of head injuries, and that the court in this case has departed both from the principles of the sacred law and also the law enacted by the Legislature in governing workmen's compensation.

Strong emphasis is placed upon the request of the petitioner upon the State Industrial Commission to make findings of fact. However, I am not aware of any express rule that says that this technical procedure can be resorted to by one complaining of the action of the Commission. It is true that two theories of the matter were presented to the Commission, one being of epilepsy caused absolutely by the injury, the other of the aggravation of a latent condition. However, it is clear to my mind that under the evidence in this case, there never was any epilepsy until the button of bone was broken at the base of the skull, close to the base of the brain, and that this was the sole cause of the unfortunate condition of the boy, and to require the Commission to be exact in saying whether it was an aggravation of a previous epilepsy, or whether it was the product of the wound, strikes me as being hypercritical. I do not find anywhere under the former rules of the court that this element, which was ordinarily resorted to by lawyers to prevent the upholding of verdicts, has any place before the Industrial Commission. There does not appear to be in the statute itself any requirement for specific findings, as distinguished from an award, which is ordinarily based, like the verdict of a jury, upon the whole case. So far had this idea been carried prior to statehood on the Oklahoma side that at the instance of a later Chief Justice of this court, though now dead, a constitutional provision was made on the subject, found in section 21, art. 7, of the Constitution, not only to supplement existing legislation, but to prevent future legislation

to the contrary, said provision being as follows:

"Sec. 21. In all jury trials, the jury shall return a general verdict, and no law in force, nor any law hereafter enacted, shall require the court to direct the jury to make findings on particular questions of fact; but the court may, in its discretion, direct such special findings."

The original statute intended to be modified by the constitutional provision is found in Revised Laws, 1910, section 5013. The courts had held that this provision was mandatory, resulting frequently in miscarriages of justice.

To use the technicality of failure to give notice at the hands of a 17 year old minor, and a failure to make special findings on request, and some slight mistake of a few days in calculation, as a basis for reversal, it seems to me, is violative of the spirit of the Constitution and of the act itself.

As to the procedure prescribed for courts, from time to time the Legislature has said that the courts with their technical reasoning had gone too far, and we now have statutes on the subject of variance and failure of proof that govern even the courts both in civil matters and in criminal cases. As applied to criminal matters, we find the following in C. O. S. 1921:

"2052. Variance in Proof. An omission to designate, or error in designating in indictment for arson, the owner or occupant of a building, shall not prejudice the proceedings thereupon, if it appears that upon the whole description given of the building it is sufficiently identified to enable the prisoner to prepare his defense."

There are general sections contained in our Code as to when variances are material, and among others are sections 312 and 313, C. O. S. 1921. All of our verdicts are generally general, though there is such a thing as the court's requiring special findings to be answered by a jury. With reference to the court itself, many a case has been affirmed by this court on the ground of the finding being general and that in the lower court the exception was not technical, and therefore the general finding covered everything. It is deemed unnecessary to cite authorities upon that kind of proposition, as it has been declared so often.

Here the Commission performs the function of court and jury and administrator, under the provisions of the act, that under the police power has been declared time and again to follow the Constitution. To now reverse this case and set aside this award, with all the evidence preserved by the Commission, simply because they did not comply with a technical request to make special findings, as this opinion seems to indicate, it seems to me, would be but a perversion of function.

Section 556, C. O. S. 1921, in prescribing court procedure, prescribes a far less mandatory requirement in dealing with the courts than this court has prescribed in the face of positive statute to the contrary with reference to the findings of the Commission. That section is as follows:

"556. Finding by Court. Upon the trial of questions of fact by the court, it shall not be necessary for the court to state its findings, except generally, for the plaintiff or defendant. unless one of the parties request it with the view of excepting to the decision of the court upon the questions of law involved in the trial; in which case the court shall state in writing, the conclusions of fact found, separately from the conclusions of law."

As to the few days in time from which the court finds the compensation should begin, in view of the situation of the boy in this case. it will be practically immaterial, if the defendant company is liable, whether its liability begins on the 15th of May or the 29th, but in any event, that is a matter largely clerical that can be corrected at any time by the Commission upon its attention being called to it. However, the position of the oil company not having paid any compensation at all is not a very laudable one, so far as raising that kind of a point, as I view it.

So far as the notice is concerned, I do not think it was necessary for formal written notice to be given, and I can see no reason why, if the case has developed to such an extent that it would appear to be compensable under the law, after allowing for the various waiting periods, there was any necessity for serving notice, especially as the man in charge of the work, and who had been for some days, was present when the accident happened. Besides, in the testimony there appears a statement from the trial commissioner that would indicate that there was a finding that the claimant was excusable for not presenting claim. It is quoted above. Most clearly, at the time of the injury, Bice was the foreman under whom the boy was working, whether he be strictly a gang pusher or one with superintending power. It appears that he asked the boy whether he wanted to work any more after the accident, according to this evidence.

As to whether such a foreman was required, under the rules of the company, to report accidental injuries to the claimant, the record seems to be silent. The statute

itself, apparently, in referring to the notice, is silent on the proposition of the regulations of the employer requiring notice of an accident, which merely refers to an agent in charge of the business "in the place where the injury" occurred. The injury occurred in this case in the engine house place. Bice was the man in charge of the work at the particular time, regardless of whether he was gang pusher, superintendent, or any other name that was given to him in the intelligence department of the corporation.

I do not believe that the question would turn upon the question as to whether or not Bice was required by the rules of the company to report to headquarters, but the same liberality that is required, it seems to me, in ordinary cases, should be applied to this, notwithstanding the plaintiff is a minor under the age of 18 years, and that the injury is likely to last for a long time.

So far as the Commission making findings of fact, so that this court may look to the findings of fact and not review the evidence, I do not believe that any court decision would justify such a holding in this case. Under that evidence, the Commission was entitled to make an award, finding that the epilepsy in this case was induced solely by the injury. It could scarcely have made any other. I think that our own industrial law stands, like all others, upon its own peculiar wording and the policy view of our own Legislature. I cannot subscribe to the doctrine, with as plain a provision as we have here expressive of a declared purpose, that it could be said to have been put in by inadvertence. Neither can I believe that on the rulings of testimony and hypothetical questions the Commission should be held to the strictness that we hold judges of criminal courts, when life and death are at stake, in the way of having been taken or of being applied.

When this case goes back to the Commission, under the directions given by this court, to follow the mazes and labyrinths thereof, would require higher training than the average lawyer or industrial commissioner has.

I respectfully dissent from the majority opinion in this case, as I regard the decision as subversive entirely of the policy of the Legislature in enacting the Workmen's Compensation Laws, as well as being in direct violation of the positive rules of law that have been enacted for the guidance of this court, both in form of the Constitution and statutory provisions.

Note.—See under (1, 3), annotation in L. R. A. 1916A, 89; L. R. A. 1918E, 559; 28

R. C. L. 825, 826; R. C. L. Perm. Supp. p. 6249.